1  CALDWELL LESLIE & PROCTOR, PC
   LINDA M. BURROW, State Bar No. 194668
2    *burrow@caldwell-leslie.com*
   HEATHER PEARSON, State Bar No. 235167
3    *pearson@caldwell-leslie.com*
   1000 Wilshire Boulevard, Suite 600
4  Los Angeles, California  90017-2463
   Telephone: (213) 629-9040
5  Facsimile: (213) 629-9022

6  Attorneys for Defendants
   UMG RECORDINGS, INC. and
7  INTERSCOPE RECORDS

8            **UNITED STATES DISTRICT COURT**

9            **CENTRAL DISTRICT OF CALIFORNIA**

10                  **WESTERN DIVISION**

11

| 12  EBONY LATRICE BATTS, an individual a/k/a Phoenix Phenom; and 13  MANFRED MOHR, an individual, | Case No. SACV 10-8123 JFW (RZx) |
|---|---|
| 14                   Plaintiff, | **JOINDER TO OPPOSITIONS AND OPPOSITION BY DEFENDANTS UMG RECORDINGS, INC. AND INTERSCOPE RECORDS TO MOTION FOR PRELIMINARY INJUNCTION; DECLARATIONS OF TROY MARSHALL, TOM ROWLAND, IKE YOUSSEF AND NEIL NAGANO; REQUEST FOR JUDICIAL NOTICE** |
| 15                      v. | |
| 16  WILLIAM ADAMS, JR., STACY FERGUSON; ALLAN PINEDA; and 17  JAIME GOMEZ, all individually and collectively as the music group The 18  Black Eyed Peas; JAIME MUNSON a/k/a Poet Name Life; UMG 19  RECORDINGS, INC.; INTERSCOPE RECORDS; EMI APRIL MUSIC, 20  INC.; HEADPHONE JUNKIE PUBLISHING, LLC; WILL.I.AM. 21  MUSIC, LLC; JEEPNEY MUSIC, INC.; TAB MAGNETIC 22  PUBLISHING; and CHERRY RIVER MUSIC CO., | |
| 23                  Defendants. | Hearing Date:   February 7, 2011 |
| 24 | Time:           1:30 p.m. |
|  | Courtroom      16 |
|  | Trial Date:     None Set |

25

26

27

28

# **TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION ................................................................................. 1

II.  PLAINTIFFS CANNOT ESTABLISH THAT THE BLACK EYED
     PEAS HAD ACCESS TO THEIR WORK ......................................... 2

     A.   There is No Evidence Any "E-Blast" Was Ever Sent to
          Interscope, and Even if it Was, the "Blast" is not Evidence of
          Access .................................................................................. 3

     B.   The Evidence is Undisputed that Marshall Never Passed "Boom
          Dynamite" On to the Black Eyed Peas ....................................... 5

III. PLAINTIFFS WILL NOT SUFFER IRREPARABLE HARM ............... 6

     A.   Plaintiffs are Not Entitled to a Presumption of Irreparable Harm ......... 6

     B.   Plaintiffs Have Not Been Irreparably Harmed .............................. 8

          1.   Plaintiffs' Delay In Bringing This Action Fatally
               Undermines Their Claim of Harm ....................................... 8

          2.   Plaintiffs All But Concede Their Harm Can Be Addressed
               Through Money Damages ................................................. 10

IV.  THE BALANCE OF HARDSHIPS WEIGHS AGAINST THE
     PROPOSED INJUNCTION ........................................................... 11

V.   A PRELIMINARY INJUNCTION WOULD NOT SERVE THE
     PUBLIC INTEREST ...................................................................... 14

VI.  TO PROTECT UMG, PLAINTIFFS WOULD HAVE TO POST AN
     IMMENSE BOND .......................................................................... 15

VII. CONCLUSION ............................................................................... 18

JOINDER TO OPPOSITION AND
OPPOSITION TO MOTION FOR PRELIMINARY Y INJUNCTION

# TABLE OF AUTHORITIES

Page(s)

<u>Cases</u>

*A&M Records, Inc. v. Napster, Inc.,*
    239 F.3d 1004 (9th Cir. 2001) ...................................................................10

*Abend v. MCA, Inc.,*
    863 F.2d 1465 (9th Cir. 1988) ........................................................6, 10, 14

*Apple Computer, Inc. v. Franklin Computer Corp.,*
    714 F.2d 1240 (3d. Cir. 1983) ....................................................................14

*Aurora World, Inc. v. Ty Inc.,*
    719 F. Supp. 2d 1115 (C.D. Cal. 2009) ..................................................7, 15

*Autoskill Inc. v. Nat'l Educ. Support Sys., Inc.,*
    994 F.2d 1476 (10th Cir. 1993) ..................................................................14

*Barahona-Gomez v. Reno,*
    167 F.3d 1228 (9th Cir. 1999) ....................................................................17

*Cal ex. rel. Van De Kamp v. Tahoe Regional Planning Agency,*
    766 F.2d 1319 (9th Cir. 1985) ....................................................................17

*Calmar, Inc. v. Emson Research, Inc.,*
    838 F. Supp. 453 (C.D. Cal. 1993) .............................................................10

*Canopy Music, Inc. v. Harbor Cities Broad., Inc.,*
    950 F. Supp. 913 (E.D. Wis. 1997) ............................................................13

*Chase-Riboud v. Dreamworks, Inc.*
    987 F. Supp. 1222 (C.D. Cal. 1997) ...........................................................13

*Concrete Mach. Co. Inc. v. Classic Lawn Ornaments*, Inc.,
    843 F.2d 600 (1st Cir. 1988) ......................................................................14

*eBay Inc. v. MercExchange, L.L.C.,*
    547 U.S. 388 (2006) .................................................................................6, 7

-iv-

CALDWELL
LESLIE &
PROCTOR

*Frank's GMC Truck Center, Inc. v. General Motors Corp.*,
      847 F.2d 100 (3d Cir. 1988) ............................................................................18

*Friends of the Earth v. Brinegar*,
      518 F.2d 322 (9th Cir. 1975) ..........................................................................17

*Gillette Co. v. Ed Pinaud, Inc.*,
      178 F. Supp. 618 (S.D.N.Y. 1959) ...................................................................9

*Gilman v. Schwarzenegger*,
      No. 10-15471, 2010 WL 4925439
      (9th Cir. Dec. 6, 2010) ..............................................................................1, 2

*Herzog v. Castle Rock Entertainment*,
      193 F.3d 1241 (11th Cir. 1999) ....................................................................4, 5

*High Tech Med. Instrumentation, Inc.v.*
      *New Image Indus., Inc.*,
      49 F.3d 1551 (Fed. Cir. 1995) ......................................................................7, 9

*International Jensen, Inc. v. Metrosound U.S.A., Inc.*,
      4 F.3d 819 (9th Cir. 1993) ........................................................................11, 12

*Jorgensen v. Epic/Sony Records*,
      351 F.3d 46 (2d Cir. 2003) ..........................................................................3, 4

*LucasFilm Ltd. v. Media Market Group, Ltd.*,
      182 F. Supp. 2d 897 (N.D. Cal. 2002) .............................................................13

*Mead Johnson & Co. v. Abbott Labs.*,
      201 F.3d 883 (7th Cir. 2000) ..........................................................................16

*Meta-Film Assocs. v. MCA, Inc.*,
      586 F. Supp. 1346 (C.D. Cal. 1984) ..................................................................3

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*,
      518 F. Supp. 2d 1197 (C.D. Cal. 2007) ..............................................................7

-iv-

*Nintendo of Am., Inc. v. Lewis Galoob Toys, Inc.,*
   16 F.3d 1032 (9th Cir. 1994) ...............................................................16

*Northwestern Bell Tel. Co. v. Bedco of Minn, Inc.,*
   501 F. Supp. 299 (D. Minn. 1980) ......................................................16

*Oakland Tribune, Inc. v. Chronicle Publishing Co., Inc.,*
   762 F.2d 1374 (9th Cir. 1985) ...............................................................8

*Oracle USA v. Graphnet, Inc.,*
   No. C06-05351, 2007 WL 485959
   (N.D. Cal. Feb. 12, 2007) .................................................................2, 3

*Playboy Enters. v. Netscape Communications Corp.,*
   55 F. Supp. 2d 1070 (C.D. Cal. 1999).................................................9

*Printers Services Co. v. Bondurant,*
   20 U.S.P.Q.2d 1626 (C.D. Cal. 1991 ) ...............................................16

*Protech Diamond Tools, Incorporation v. Liao,*
   No. C 08-3684, 2009 WL 1626587
   (N.D. Cal. June 8, 2009)..................................................................8, 9

*Reebok Int'l Ltd. v. J. Baker, Inc.,*
   32 F.3d 1552 (Fed. Cir. 1994) ...............................................................7

*Santa Rosa Mem. Hosp. v. Maxwell-Jolly,*
   380 Fed. Appx. 656 (9th Cir. 2010) ....................................................17

*Sargent v. Am. Greetings Corp.,*
   588 F. Supp. 912 (N.D. Ohio 1984) ....................................................11

*Save our Sonoran, Inc. v. Flowers,*
   408 F.3d 1113 (9th Cir. 2005) .............................................................17

*Seals-McClellan v. Dreamworks, Inc.,*
   120 Fed.Appx. 3 (9th Cir. 2004) ...........................................................3

-iv-

*Severin Montres Ltd. v. Yidah Watch Co.*,
　　997 F. Supp. 1262 (C.D. Cal. 1997) .................................................. 2

*Stormans, Inc. v. Selecky*,
　　586 F.3d 1109 (9th Cir. 2009) ...................................................... 14

*Summit Entertainment, LLC v. Beckett Media, LLC*,
　　No. CV 09-8161, 2010 WL 147958
　　(C.D. Cal. Jan. 12, 2010) ............................................................ 7

*Taylor Corp. v. Four Seasons Greetings, LLC*,
　　403 F.3d 958 (8th Cir. 2005) ....................................................... 10

*Towler v. Sayles*,
　　76 F.3d 579 (4th Cir. 1996) .......................................................... 4

*Trust Co. Bank v. Putman Pub. Group, Inc.*,
　　5 U.S.P.Q.2d 1874 (C.D. Cal. 1988) ................................... 12, 14, 15

*Walczak v. EPL Prolong, Inc.*,
　　198 F.3d 725, 733 (9th Cir. 1999) ................................................. 16

*Winter v. Natural Res. Def. Council, Inc.*,
　　555 U.S. 7, 129 S.Ct. 365 (2008) ................................................. 6, 7

<u>Statutes</u>

Fed. R. Civ. P. 65(c) ..................................................................... 15

-iv-

## I.   INTRODUCTION

Defendants UMG Recordings, Inc. and Interscope Records (collectively, "UMG") hereby oppose the Motion for a Preliminary Injunction filed by Plaintiffs Ebony Latrice Batts and Manfred Mohr ("Plaintiffs").  Instead of repeating the arguments and evidence presented by other Defendants, UMG hereby joins in their Oppositions.  UMG firmly agrees with its co-Defendants that Plaintiffs have failed to establish that they are likely to prevail on the merits of their claim, which alone is reason enough to deny this motion for a Preliminary Injunction.  *See Gilman v. Schwarzenegger*, No. 10-15471, 2010 WL 4925439, at *3 (9th Cir. Dec. 6, 2010) (providing that "[a] plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, *and* that an injunction is in the public interest") (emphasis added).

UMG files this brief to support the other Defendants' Oppositions, and emphasize that this Motion should be denied for at least five reasons:

- *First*, in addition to the reasons why Plaintiffs cannot succeed on the merits discussed by UMG's co-Defendants, the evidence offered by Plaintiffs does not raise an inference that the Black Eyed Peas had access to Plaintiffs' work, and thus Plaintiffs cannot succeed on the merits of the copyright claim.

- *Second*, Plaintiffs delayed nearly two years from the release of the alleged infringing work, the Black Eyed Peas' "Boom Boom Pow," (the "Song") to bring this motion—an unreasonably long period that negates any finding of irreparable harm.

- *Third*, Plaintiffs' Motion makes clear that any harm they may have suffered is not irreparable.  Rather, Plaintiffs seek through their lawsuit

JOINDER TO OPPOSITION AND
OPPOSITION TO MOTION FOR PRELIMINARY Y INJUNCTION

1   a share of the "millions of dollars" they claim Defendants have

2   received from the distribution of the Song.

3   • *Fourth*, when balancing the harms caused by the injunction, this Court

4   must account for the substantial, and in large measure incalculable,

5   costs that UMG would incur in complying with their proposed

6   injunction, which far outweigh any possible harm Plaintiffs may incur

7   during this litigation.

8   • *Finally*, Plaintiffs fail to offer any evidence of any "public interest,"

9   that would be served should an injunction issue in this case.

10   In addition, contrary to Plaintiffs' apparent belief that they are entitled to the

11   benefit of an injunction without satisfying their burden to post a bond (a position for

12   which there is no support), any injunction in this case must be secured by an

13   immense bond, and even that bond could not protect against the intangible harm of

14   loss of good will and reputation that the injunction would cause UMG.

15   "'A preliminary injunction is an extraordinary and drastic remedy; it is never

16   awarded as of right.'" *Gilman*, 2010 WL 4925439, at *3 (quoting *Munaf v. Geren*,

17   553 U.S. 674, 689-90 (2008) (internal quotation marks omitted)).  Plaintiffs have

18   failed to meet their burden to satisfy any of the factors for injunctive relief.

19   Accordingly, for the reasons set forth below, and for the reasons described in the

20   Oppositions filed by UMG's co-Defendants, Plaintiffs' Motion should be denied.

21   **II.   PLAINTIFFS CANNOT ESTABLISH THAT THE BLACK EYED**

22   **PEAS HAD ACCESS TO THEIR WORK**

23   At the preliminary injunction stage, Plaintiffs cannot rely on mere allegations

24   of access, but must come forward with *evidence* of either "actual viewing by the

25   defendant of the plaintiff's work, or the reasonable opportunity by the defendant to

26   read, hear, or view the plaintiff's work." *Severin Montres Ltd. v. Yidah Watch Co.*,

27   997 F. Supp. 1262, 1265-66 (C.D. Cal. 1997); *see also Oracle USA v. Graphnet*,

28

-2-

1  *Inc.*, No. C06-05351, 2007 WL 485959, at *4 (N.D. Cal. Feb. 12, 2007) (denying

2  motion for preliminary injunction in the absence of "competent evidence"

3  supporting request for injunctive relief).  "A bare possibility of access is insufficient

4  to sustain a copyright infringement claim." *Seals-McClellan v. Dreamworks, Inc.*,

5  120 Fed.Appx. 3, 4 (9th Cir. 2004) (citing *Jason v. Fonda*, 698 F.2d 966, 967 (9th

6  Cir. 1982)).

7      Here, Plaintiffs attempt to show access through evidence that (1) a third-party

8  sent Interscope President Jimmy Iovine "an e-blast flyer informing its recipients of

9  'Boom Dynamite'"; and (2) "Mohr submitted 'Boom Dynamite' to Troy Marshall, a

10  Vice-President at Interscope, based on Marshall's interest in one of Plaintiffs' other

11  songs. *See* Mtn. at 15.  As described below, neither of these scenarios constitute a

12  chain of access between the Plaintiffs and the Black Eyed Peas, who created the

13  alleged infringing work, which fatally undermines Plaintiffs' infringement claim.

14      ### A.   *There is No Evidence Any "E-Blast" Was Ever Sent to Interscope,*

15      *and Even if it Was, the "Blast" is not Evidence of Access*

16      While Plaintiffs point to the purported "e-blast" as evidence of access, it is

17  well-established that such unsolicited submissions do not establish access by the

18  recipient. *See Meta-Film Assocs. v. MCA, Inc.*, 586 F. Supp. 1346, 1357-58 (C.D.

19  Cal. 1984) (rejecting the "bare corporate receipt" doctrine).  This is particularly true

20  where, as in this case, Plaintiffs offer no competent evidence that the "email blast"

21  was ever sent.  *See Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 52 (2d Cir. 2003)

22  (finding no access where the plaintiff supplied no "reasonable documentation" that

23  the work was actually sent).  Instead, Mohr merely states in his declaration that

24  *someone else* sent the "blast" (although he does not say how he knows this is the

25  case) and the exhibit attached to Mohr's declaration shows no indicia of ever being

26  sent to anyone, let alone to Iovine.  *See* Declaration of Manfred Mohr ("Mohr

27  Decl.") (Dkt. No. 61), ¶ 11, Exh. D.  Mohr's hearsay statements are not evidence

28

-3-

1  that the "blast" was ever sent to Iovine and thus fail to establish even the first link in

2  the chain of access.  *See Jorgensen*, 351 F.3d at 52 (citing *Dimmie v. Carey*, 88 F.

3  Supp. 2d 142, 146 (S.D.N.Y. 2000)) (rejecting plaintiff's claim that the mailing of

4  tapes to a corporation could "be equated with access" where there was no evidence

5  that the tapes were ever received).

6       Even if Plaintiffs could establish that the "blast" was in fact sent to Iovine,

7  they still fail to offer any support for their allegation that Iovine or anyone else at

8  Interscope forwarded "Boom Dynamite" to the Black Eyed Peas, relying instead on

9  the mere fact that Iovine is the president of the Black Eyed Peas' record label,

10  Interscope Records.  An "inference of access", however, "requires more than a mere

11  allegation that someone known to the defendant possessed the work in question."

12  *Herzog v. Castle Rock Entertainment,* 193 F.3d 1241, 1252 (11th Cir. 1999)

13  (internal quotation marks omitted).  Iovine's position at Interscope does not, by

14  itself, constitute evidence that Iovine in fact passed Plaintiffs' work on to the Black

15  Eyed Peas, *see Herzog*, 193 F.3d at 1251-2 (providing that "it must be reasonably

16  possible that the paths of the infringer and infringed work crossed") (quoting *Towler*

17  *v. Sayles*, 76 F.3d 579, 582 (4th Cir. 1996)), and Plaintiffs offer no evidence that

18  Iovine ever gave anything to the Black Eyed Peas, let alone "Boom Dynamite."[1]

19

20

21

22

23  [1] Plaintiffs' half-hearted assertion that access can be inferred by the fact that "Boom Dynamite" was distributed through a UMG affiliate in France is similarly meritless, as Plaintiffs fail to offer any explanation for how the French distribution of Plaintiffs' song gave rise to access by the Black Eyed Peas.  *See Towler*, 76 F.3d at 583 (rejecting claim of access based upon a "tortious chain of hypothetical transmittals") (citation omitted).  In fact, the UMG Defendants would have no reason to even be aware of any sound recordings licensed by UMG France, and the UMG Defendants have no record of any intercompany license agreement relating to "Boom Dynamite."  *See* Declaration of Neil Nagano ("Nagano Decl."), ¶¶ 5, 6.

24

25

26

27

28

-4-

### B.   The Evidence is Undisputed that Marshall Never Passed "Boom Dynamite" On to the Black Eyed Peas

Neither can Plaintiffs rely on their purported submission of "Boom Dynamite," and "several more songs" to Interscope Vice-President of Rap Promotion Troy Marshall. *See Mohr Decl.*, ¶ 10; *see also* Declaration of Troy Marshall ("Marshall Decl."), ¶ 5. Plaintiffs offer no evidence whatsoever that Marshall—whose job responsibilities do not include providing creative input to recording artists, *see* Marshall Decl., ¶ 4—was ever in a position to pass "Boom Dynamite" on to the Black Eyed Peas, let alone that he actually gave them the work. Indeed, Plaintiffs do not even allege that Marshall ever gave "Boom Dynamite" to the Black Eyed Peas or anyone else and thus do not allege that Mohr was, in fact, a link in the chain of access. *See Mohr Decl.*, ¶ 10. In any event, Marshall states unequivocally in his declaration that he does not recall ever receiving music from Mohr, does not recall listening to "Boom Dynamite" and, even if he had, he would not have passed "Boom Dynamite" on to anyone, let alone a member of the Black Eyed Peas. *See* Marshall Decl., ¶ 7.[2]

Plaintiffs have failed to offer any evidence—let alone credible evidence—that "Boom Dynamite" ever crossed the Black Eyed Peas' path. *See Herzog*, 193 F.3d at 1252. The absence of such evidence is fatal to Plaintiffs' copyright infringement claim, and thus to their effort to seek preliminary relief.

---

[2] As a promotions executive, Marshall does not have creative input into the artists' work. Rather, he is charged with promoting albums after they are completed. *See* Marshall Decl., ¶ 3. Accordingly, even if he had wanted to provide "Boom Dynamite" to the Black Eyed Peas, he would have passed the music on to an A&R Executive, not to the Black Eyed Peas directly. *See id.*, ¶ 5.

## III.   PLAINTIFFS WILL NOT SUFFER IRREPARABLE HARM

Plaintiffs' motion should be denied for the additional reason that, as is clear from their Motion, they would not suffer any "irreparable" harm in the absence of an injunction.  This Court cannot issue an injunction in the absence of a finding that Plaintiffs are likely to suffer irreparable harm.  *See Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 129 S.Ct. 365, 375-76 (2008) (discussing the Supreme Court's "frequently reiterated standard requir[ing] plaintiffs seeking preliminary relief to demonstrate that irreparable injury is *likely* in the absence of an injunction") (emphasis in original).  Plaintiffs appear to believe that they are not obligated to supply any evidence of harm at all; instead, according to Plaintiffs, this Court may merely *presume* harm from their (defective) infringement claims.  *See* Mot at 17-18. The law does not support this presumption, and, in any event, any presumption in this case would be negated by Plaintiffs' nearly two year delay in bringing this Motion.

### A.   *Plaintiffs are Not Entitled to a Presumption of Irreparable Harm*

Despite Plaintiffs' assertion otherwise, this Court may not merely assume irreparable harm simply because this is a copyright infringement case.  Indeed, injunctive relief has *never* been automatic in a copyright infringement case.  *See Abend v. MCA, Inc.*, 863 F.2d 1465, 1479 (9th Cir. 1988) (finding infringement but declining to enjoin distribution of defendant's film where the plaintiff "can be compensated adequately for the infringement by monetary compensation").  Moreover, the validity of any presumption of harm has been called into serious question by the Supreme Court's decisions in *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006), in which the Court held expressly that there can be no presumption of irreparable harm with respect to *permanent* injunctions in intellectual property cases, *see id.* at 394, and *Winter*, in which the Court rejected the standard then in effect in the Ninth and other Circuits, pursuant to which an

injunction could be entered based only on a "possibility" of irreparable harm where the plaintiff demonstrated a strong likelihood of prevailing on the merits.[3]  *See Winter*, 555 U.S. at ---, 129 S.Ct. at 375-76.  Since *eBay* and *Winter*, courts in this District and elsewhere have cast serious doubt on the validity of the presumption of irreparable harm in assessing the need for *preliminary* relief.  *See, e.g.*, *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1212-13 (C.D. Cal. 2007) (Wilson, J.) (citing cases and observing that "a significant number" of courts have determined that the presumption no longer applies); *see also Aurora World, Inc. v. Ty Inc.*, 719 F. Supp. 2d 1115, 1166-69 (C.D. Cal. 2009) (Morrow, J.) (declining to apply presumption of irreparable harm in trademark case).[4]

Even if irreparable harm could be presumed in some cases, that presumption has been rebutted here.  A presumption merely "shifts the ultimate burden of production . . . onto the alleged infringer"—it does not override the evidence on the record.  *See Reebok Int'l Ltd. v. J. Baker, Inc.*, 32 F.3d 1552, 1556 (Fed. Cir. 1994).  A presumption of irreparable harm is rebutted by delay in bringing a motion for an injunction, or where monetary damages alone are sufficient to compensate the plaintiff.  *High Tech Med. Instrumentation, Inc.v . New Image Indus., Inc.*, 49 F.3d 1551, 1556-57 (Fed. Cir. 1995) (applying presumption of irreparable harm, but finding presumption rebutted based upon seventeen-month delay in bringing action and an absence of evidence that monetary damages would be inadequate); *see also*

---

[3] Of course, as Plaintiffs have failed to establish that they are likely to prevail on the merits at all, let alone demonstrate a *strong* likelihood, this standard would not have applied in this case.

[4] *Summit Entertainment, LLC v. Beckett Media, LLC*, No. CV 09-8161, 2010 WL 147958 (C.D. Cal. Jan. 12, 2010) (Guttierez, J.), the unpublished district court case on which Plaintiffs rely, is not to the contrary.  In *Summit Entertainment,* the Court, after noting case law describing this "presumption," went on to make a factual determination that the plaintiff had, in fact, demonstrated that irreparable harm was likely.  *See id.* at *4.

CALDWELL
LESLIE &
PROCTOR

*Protech Diamond Tools, Incorporation v. Liao*, No. C 08-3684, 2009 WL 1626587, at *6 (N.D. Cal. June 8, 2009) (acknowledging the existence of a presumption of harm, but finding presumption rebutted where the plaintiff had waited two years after the alleged infringement to file a complaint, and then waited another five months to file a motion for a preliminary injunction).

As discussed below, it is clear that any presumption of harm has been negated by Plaintiffs' unexplained nearly two-year delay in filing this Motion, and any harm Plaintiffs may have suffered can be easily addressed through monetary damages.

### B.   *Plaintiffs Have Not Been Irreparably Harmed*

#### 1.   **Plaintiffs' Delay In Bringing This Action Fatally Undermines Their Claim of Harm**

It is abundantly clear from Plaintiffs' Motion that they have not suffered irreparable harm.  Plaintiffs admit that Defendants' alleged infringement began upon release of "Boom Boom Pow" in March of 2009, twenty-two months ago.  *See* Declaration of Ike Youssef ("Youssef Decl."), ¶ 2; *see also* Declaration of Ebony Latrice Batts ("Phoenix Decl."), ¶ 14.  Plaintiffs first filed a lawsuit alleging the song infringed on Plaintiffs' copyright in the U.S. District Court for the Northern District of Illinois in January 2010, and although that Court heard multiple motions regarding this case, Plaintiffs never sought an injunction.  *See* Request for Judicial Notice ("RJN"), Exh. A.  The Illinois District Court dismissed the case in April of 2010, and granted Plaintiffs 21 days, until May 18, 2010, to re-file the lawsuit in an appropriate forum.  *Id.*  Plaintiffs did not re-file within 21 days.  Instead, they waited until October 28, 2010 to file this lawsuit.  *See* Dkt. No. 1.  Even then they did not seek a preliminary injunction, but waited almost three more months, until January 10, 2011, to file this Motion.  *See* Dkt. No. 54.

"Plaintiff's long delay before seeking a preliminary injunction implies a lack of urgency and irreparable harm."  *Oakland Tribune, Inc. v. Chronicle Publishing*

JOINDER TO OPPOSITION AND
OPPOSITION TO MOTION FOR PRELIMINARY Y INJUNCTION

1    *Co., Inc.*, 762 F.2d 1374, 1377 (9th Cir. 1985).  "A preliminary injunction is sought

2    upon the theory that there is an urgent need for speedy action to protect the

3    plaintiff's rights.  By sleeping on its rights a plaintiff demonstrates the lack of need

4    for speedy action . . . ."  *Gillette Co. v. Ed Pinaud, Inc.*, 178 F. Supp. 618, 622

5    (S.D.N.Y. 1959) (denying preliminary injunction where plaintiff waited six months

6    after Defendant started marketing a product to request injunction for alleged

7    trademark infringement); *see also Playboy Enters. v. Netscape Communications*

8    *Corp.*, 55 F. Supp. 2d 1070, 1080, 1090 (C.D. Cal. 1999) (Stotler, J.) (denying

9    preliminary injunction because plaintiff's five-month delay in seeking injunctive

10   relief demonstrated lack of any irreparable harm), *aff'd*, 202 F.3d 278 (9th Cir.

11   1999); *see also High Tech Med.*, 49 F.3d at 1556-57 (finding seventeen-month delay

12   in bringing action "a substantial period of delay that militates against the issuance of

13   a preliminary injunction"); *see also Protech Diamond Tools*, 2009 WL 1626587, at

14   *6 (finding "delay alone . . . sufficient to undermine Plaintiff's claim of immediate,

15   irreparable harm").

16          The absence of irreparable harm to Plaintiffs is further bolstered by Plaintiffs'

17   failure even to *register* the work until two years after they allege to have created it.

18   *See* Mohr Decl., ¶ 4 (stating that Plaintiffs created  "Boom Dynamite" in 2007, but

19   registered the work with the Copyright Office in 2009 – after they filed the lawsuit

20   in Illinois).  Nevertheless, prior to registration, Plaintiffs authorized others to send

21   "email blasts" of "Boom Dynamite" to record companies, and to promote "Boom

22   Dynamite" on YouTube.  *See* Mohr Decl., ¶ 11.  If Plaintiffs could not be bothered

23   to make even the most basic effort at protecting their work before it was distributed

24

25

26

27

28

-9-

1   and promoted, they cannot now claim that further distribution of "Boom Boom

2   Pow" will harm them irreparably. [5]

3       **2.      Plaintiffs All But Concede Their Harm Can Be Addressed**

4              **Through Money Damages**

5       It is axiomatic that, for an injunction to issue, the harm to be prevented must

6   be *irreparable*—in other words, not redressible through money damages alone.  *See,*

7   *e.g., Calmar, Inc. v. Emson Research, Inc.*, 838 F. Supp. 453, 455-56 (C.D. Cal.

8   1993) (Tevrizian, J.) (holding that plaintiff was not irreparably harmed where the

9   defendant was "financially sound and capable of satisfying [any] monetary damage

10  award"); *see also Abend*, 863 F.2d at 1479 (declining to enjoin further distribution

11  of the film *Rear Window* because the plaintiff could "be compensated adequately for

12  the infringement by monetary compensation").

13      Here, after waiting almost two years since the Black Eyed Peas released

14  "Boom Boom Pow", Plaintiffs now seek an injunction on the grounds that, to date,

15  the Defendants have reaped "millions of dollars of profit" from its exploitation.

16  (*See* Mot. at 18; *see also id.* at 19 (arguing that granting the preliminary injunction

17  would prevent the Defendants from "unjustly reaping substantial profits…")).  Even

18  if Plaintiffs could establish that "Boom Boom Pow" infringes their work (which, for

19  _____

20  [5] *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004 (9th Cir. 2001), on which
    Plaintiffs rely, is not to the contrary.  In *Napster*, the Ninth Circuit held that the
21  activities of the Napster file-sharing service, which allowed users to download
    copyrighted sound recordings for free, had an irreparable "deleterious effect on the
22  present and future digital download market" for such recordings. 239 F.3d at 1017.
    This case does not concern an entire *market*, as was the case in *Napster*, but a single
23  work, which Plaintiffs concede they have not sold.  Similarly inapposite is *Taylor*
    *Corp. v. Four Seasons Greetings, LLC*, 403 F.3d 958 (8th Cir. 2005), in which the
24  court concluded that the plaintiff's decision not to seek monetary relief did not
    preclude it from obtaining a permanent injunction following trial—particularly
25  where, as in that case, the defendants' use of the plaintiff's copyrighted greeting
    cards precluded the plaintiff from making any use whatsoever of that material
26  thereafter.  *Id.* at 962, 967-68.

27

28                                         -10-

1    all the reasons set forth in this Opposition, and the Oppositions filed by UMG's co-

2    Defendants, they cannot), it is clear that what Plaintiffs' seek is not the protection of

3    their work for some higher purpose, but a share of the Defendants' profits arising

4    from the use of that work.  Such harm can unquestionably be ameliorated with

5    monetary damages, and Plaintiffs are therefore not entitled to an injunction.

6    **IV.    THE BALANCE OF HARDSHIPS WEIGHS AGAINST THE**

7    **PROPOSED INJUNCTION**

8        Plaintiffs ask this Court to enjoin Defendants from (1) distributing copies of,

9    and making and distributing phonorecords the musical composition "Boom Boom

10   Pow" (which includes the Black Eyed Peas' album, *The E.N.D.)*, (2) from licensing,

11   and (3) "contributing to or participating in and furthering any infringing acts",

12   including but not limited to any public performances of the song.[6]  Not only do

13   Plaintiffs fail to offer any evidence of irreparable harm, but it is clear from

14   Plaintiffs' Motion that UMG would suffer disproportionally if the requested

15   injunction should issue.

16       An injunction may not issue unless the balance of harms favors the moving

17   party.  *See International Jensen, Inc. v. Metrosound U.S.A., Inc.*, 4 F.3d 819, 822

18   (9th Cir. 1993).  Where, as in this case, the Plaintiffs fail to establish a likelihood of

19   success on the merits of a claim, they are not entitled to an injunction unless they

20

21

22   _____

23   [6] Plaintiffs purport to ask for the Court to escrow Defendants' revenues relating to
     "Boom Boom Pow" while the injunction is in place, although such relief is not
     mentioned in Plaintiffs' Proposed Preliminary Injunction.  *See* Mot. at 2, 22.  In any

24   event, an escrow is a remedy usually reserved for circumstances where the
     defendant has questionable financial health, for which Plaintiffs offer no evidence

25   here.  *See, e.g., Sargent v. Am. Greetings Corp.*, 588 F. Supp. 912, 925-26 (N.D.
     Ohio. 1984) (rejecting request to have proceeds from sale of alleged infringing

26   works placed in escrow, where the plaintiff failed to demonstrate a likelihood of
     success on the merits and where the defendant was financially healthy).

27

28

1  can demonstrate that there are "serious questions" going to the merits *and* that the

2  balance of hardships tips sharply in their favor. *Id.*

3      The balance of harms sharply favors the denial of Plaintiffs' Motion. "Boom

4  Boom Pow" is a highly-successful song, and part of Black Eyed Peas' immensely

5  popular album, "The E.N.D" (the "Album"). *See* Youssef Decl., ¶ 2. Should, as

6  Plaintiffs requests, the Defendants be required to halt its distribution overnight, it

7  would cost at least $900,000 dollars to have representatives and retailers pull the

8  album and song from store shelves. *Id.*, ¶ 3. In addition, UMG suffer substantial

9  costs relating to revising the Album's artwork, remastering the Album and

10 manufacturing new copies of the Album and would lose the ability to sell more than

11 $100,000 worth of existing, but yet undistributed, copies of the album. *Id.*, ¶ 4. In

12 addition, because of "Boom Boom Pow's" vast popularity, it is likely that a

13 significant number of consumers would simply decline to purchase a copy of the

14 Album that did not include "Boom Boom Pow," thus causing UMG to suffer further

15 – if unquantifiable – losses. *Id.*, ¶ 5.

16     UMG would suffer even greater harm from loss of the ability to exploit the

17 "Boom Boom Pow" single itself, such as, for example, with individual track sales

18 through retailers like iTunes or through mastertones. *Id.*, ¶ 5. The present value of

19 those future sales is at least $4,000,000. *Id.*

20     If UMG were to be required to pull the Album from the shelves (or even if it

21 were simply required to stop any further distribution of the Album so long as it

22 contains "Boom Boom Pow") UMG would also suffer a substantial loss of goodwill

23 with retailers – both traditional record stores and digital retailers such as iTunes.

24 *Id.*, ¶¶ 6. For traditional retailers, this loss of goodwill could have implications for

25 UMG's ability to place other product in those stores in the future. *Id.* at ¶ 6; *see*

26 *also Trust Co. Bank v. Putman Pub. Group, Inc.*, 5 U.S.P.Q.2d 1874, 1877 (C.D.

27 Cal. 1988) (Stotler, J.) (refusing to enjoin publication of book alleged to infringe

28

-12-

"Gone with the Wind" where, among other things, an injunction would damage the defendant's "goodwill with wholesalers and retailers" and would "have an adverse effect [on the defendant's] ability to obtain shelf space at bookstores").

UMG would be harmed even further if, as Plaintiffs suggest, it were to be prohibited from licensing "Boom Boom Pow" for use in films, television programs, commercials and video games (collectively, "Ancillary Exploitations"). *See* Declaration of Tom Rowland ("Rowland Decl."), ¶ 5. "Boom Boom Pow" has generated at least $740,000 in license revenue from Ancillary Exploitations. *Id.* ¶ 4. UMG conservatively estimates that "Boom Boom Pow" will generate at least an additional $375,000 in Ancillary Exploitation revenue over the next two years— revenue that would not be directly replaced if the Court enjoined UMG from further licensing activity. *Id.*, ¶ 5.

These harms, balanced against the minimal harm Plaintiffs would suffer should "Boom Boom Pow" continue to be distributed, weigh *against* the issuance of an injunction. *See, e.g. LucasFilm Ltd. v. Media Market Group, Ltd.*, 182 F. Supp. 2d 897, 901-02 (N.D. Cal. 2002) (denying motion for preliminary injunction where the balance of hardships did not tip sharply in the plaintiff's favor); *Chase-Riboud v. Dreamworks, Inc.*, 987 F. Supp. 1222, 1233 (C.D. Cal. 1997) (refusing to enjoin the release of the film "Amistad" where, although the plaintiff had raised serious questions to the validity of the claim, the defendants had invested heavily in the film, and release was imminent).[7]

---

[7] Plaintiffs' reliance on *Canopy Music Inc. v. Harbor Cities Broad., Inc.*, 950 F. Supp. 913 (E.D. Wis. 1997), is misplaced.  The court in *Canopy Music* enjoined a radio station from broadcasting recordings of compositions owned by the plaintiffs after the plaintiffs' public performance license was terminated.  950 F. Supp. at 915-16.  The fact of infringement was not in dispute (indeed, the station was in default)—the only question was whether the equities favored an injunction—and the station was unlikely to suffer any significant harm if enjoined. *Id.*  Here, unlike *Canopy*, Plaintiffs have not established any likelihood of success on the merits, and the harm to UMG if it were to be enjoined would be substantial.

## V.   A PRELIMINARY INJUNCTION WOULD NOT SERVE THE PUBLIC INTEREST

Where an injunction goes beyond the parties, carrying with it a potential for public consequences, the "public interest" becomes relevant to whether an injunction should issue. *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1139 (9th Cir. 2009).  Plaintiffs argue conclusorily that "[t]here is a public interest in upholding intellectual property rights such as copyright protections," that favors an injunction in this case. *See* Mot. at 18.  In each of the cases Plaintiffs cite to support their position, however, the plaintiff had established a clear likelihood of success on the merits—which is not present here. *See Concrete Mach. Co., Inc. v. Classic Lawn Ornaments*, Inc., 843 F.2d 600, 612 (1st Cir. 1988) ("the issue of public policy rarely is a genuine issue if *the copyright owner has established a likelihood of success*") (emphasis added)); *Autoskill Inc. v. Nat'l Educ. Support Sys., Inc.*, 994 F.2d 1476, 1487 (10th Cir. 1993) (likelihood of success established); *Apple Computer, Inc. v. Franklin Computer Corp.*, 714 F.2d 1240, 1245 (3d. Cir. 1983) (copying admitted).

Moreover, none of the cases on which Plaintiffs rely make any substantial finding regarding the public interest, or even suggests (as Plaintiffs argue) that the public's interest in upholding copyright protection will always support an injunction on behalf of a claimed copyright holder.  Indeed, the Ninth Circuit and courts in this District have *denied* injunctive relief where, although the plaintiff established a likelihood of success on its infringement claim, the public's interest in access to an artwork outweighed the need to protect the plaintiff's rights.  In *Abend*, for example, the Ninth Circuit found that because "an injunction could cause public injury by denying the public the opportunity to view a classic film" (Alfred Hitchcock's *Rear Window*), monetary damages would adequately compensate the plaintiff for any infringement.  863 F.2d at 1479.  Similarly, in *Trust Co. Bank*, Judge Stotler denied

-14-

1  a preliminary injunction that would have prohibited the publication a work alleged

2  to infringe *Gone with the Wind*, citing the "strong public interest favoring the

3  publication of books and novels." 5 U.S.P.Q.2d at 1877.  This same public interest

4  supports allowing the public access to a popular song like "Boom Boom Pow", and

5  denial of Plaintiffs' request for a preliminary injunction.

6        Neither can Plaintiffs obtain a preliminary injunction in this case as part of

7  their independent effort to "help maintain and further the integrity of the music

8  business." Mot. at 19.  The burden is on *Plaintiffs* to establish that they are entitled

9  to an injunction *in this case*.  *See Aurora World*, 719 F. Supp. 2d  at 1124 (providing

10  that the plaintiff must make a "clear showing" that he is entitled to injunctive relief).

11  A injunction that withdraws a hit song from public access before the Court has

12  determined infringement (indeed, where a finding of infringement is unlikely) does

13  not promote copyright protection or the integrity of the industry.  Instead, it creates a

14  vehicle for unsuccessful artists to extort payment from defendants based on false

15  and unproven claims.[8]

16  **VI.  TO PROTECT UMG, PLAINTIFFS WOULD HAVE TO POST AN**

17         **IMMENSE BOND**

18        Finally, any injunction issued in this case must be supported by a sizable bond.

19  Although Plaintiffs claim that this Court may dispense with the bond requirement

20  entirely, the Federal Rules *require* Plaintiffs to post a bond "to pay the costs and

21  damages sustained by any party found to have been wrongfully enjoined or

22  restrained."  Fed. R. Civ. P. 65(c).  The purpose of the bond requirement is

23  threefold:  (1) to discourage the moving party from seeking preliminary injunctive

24

25  [8] Plaintiffs' attempt to ground their injunction based upon "widespread reports" of other infringement claims against Black Eyed Peas (despite the absence of *any*

26  finding of infringement) is both improper and completely without basis in fact or law.

27

28

JOINDER TO OPPOSITION AND
OPPOSITION TO MOTION FOR PRELIMINARY Y INJUNCTION

1   relief to which it is not entitled; (2) to assure the court that if it errs in granting such

2   relief the moving party rather than the wrongfully-enjoined party will bear the cost

3   of the error; (3) to provide a wrongfully-enjoined party a source from which it may

4   readily collect damages without further litigation and without regard to the moving

5   party's solvency. *Nintendo of Am., Inc. v. Lewis Galoob Toys, Inc.*, 16 F.3d 1032,

6   1037 (9th Cir. 1994). "When setting the amount of security, district courts should

7   err on the high side. . . [A]n error in the other direction produces irreparable injury,

8   because the damages for an erroneous preliminary injunction cannot exceed the

9   amount of the bond." *Mead Johnson & Co. v. Abbott Labs.*, 201 F.3d 883, 888 (7th

10  Cir. 2000).

11       Plaintiffs rely on authorities wholly inapposite to this case in their attempt to

12  avoid their security obligations. For example, Plaintiffs cite *Walczak v. EPL*

13  *Prolong, Inc.*, 198 F.3d 725, 733 (9th Cir. 1999), for the proposition that the Court

14  has discretion to order a nominal bond. (*See* Mot. at 21.) In *Walczak*, however, the

15  Ninth Circuit simply found that the District Court had acted within its discretion to

16  order a $100,000 bond where the amount was supported by the evidence. *Id.* at 734.

17  Neither can Plaintiffs find any support in *Printers Services Co. v. Bondurant*, 20

18  U.S.P.Q.2d 1626 (C.D. Cal. 1991), in which the court required a nominal $1,000

19  bond based on the fact that the moving party had demonstrated a strong likelihood

20  of success on the evidence on its trademark claim, and there was no evidence that

21  the injunction would cause the non-moving party any harm. *Id.* at 1633. Similarly

22  inapposite is Plaintiffs' reliance on *Northwestern Bell Tel. Co. v. Bedco of Minn.,*

23  *Inc.*, 501 F. Supp. 299 (D. Minn. 1980), where the defendant used photocopies of

24  advertisements from the plaintiff's Yellow Pages directory in materials it used to try

25  to solicit advertisers for its competing directory. *Id.* at 300. The court enjoined the

26  use of these photocopies (but not defendant's non-infringing efforts to compete with

27  the plaintiff) and declined to post a bond, holding that no bond was required

28

-16-

1  "[c]onsidering the strength of the case presented by the plaintiff" and the absence of

2  any substantial harm suffered by the defendant as a result of the injunction. *Id.* at

3  304.

4       Each of the other cases cited by Plaintiff concerns an injunction granted to

5  individuals or non-profit organizations that sought relief from government action on

6  behalf of the public interest. *See, e.g., Save our Sonoran, Inc. v. Flowers*, 408 F.3d

7  1113, 1125-26 (9th Cir. 2005) (discussing the Ninth Circuit's "long-standing

8  precedent that requiring nominal bonds is perfectly proper in public interest

9  litigation" and affirming $50,000 bond securing injunction against construction in

10  Sonoran desert); *Barahona-Gomez v. Reno*, 167 F.3d 1228, 1237 (9th Cir. 1999)

11  (declining to require that class of undocumented immigrants post a bond to secure

12  injunction staying deportations, particularly in the absence of evidence that

13  injunction caused government any harm); *Cal ex. rel. Van De Kamp v. Tahoe*

14  *Regional Planning Agency*, 766 F.2d 1319, 1325 (9th Cir. 1985) (declining to

15  require bond in environmental action, "where requiring security would effectively

16  deny access to judicial review"); *Friends of the Earth v. Brinegar*, 518 F.2d 322 (9th

17  Cir. 1975) (reversing $4,500,000 bond imposed in injunction obtained by non-profit

18  against government construction, noting that unreasonably high bond requirements

19  would undermine statutory mechanisms for environmental enforcement); *see also*

20  *Santa Rosa Mem. Hosp. v. Maxwell-Jolly*, 380 Fed. Appx. 656, 658 (9th Cir. 2010)

21  (citing *Save Our Sonoran*, and finding that a challenge to Medicaid reimbursement

22  rates falls within the "public interest" exception to the bond requirement). None of

23  these cases apply here, where the Plaintiffs are not acting on behalf of the public

24  interest, but is merely seeking to protect their alleged rights in musical works.

25       Unlike the cases on which they rely, Plaintiffs here are not acting on behalf of

26  a non-profit agency or otherwise in the public interest—Plaintiffs merely assert their

27  purported rights in a musical composition they claim Defendants infringed.

28

-17-

CALDWELL
LESLIE &
PROCTOR

1  Plaintiffs have similarly failed to make out a strong case of infringement, there is
2  substantial evidence of the harm to UMG accruing from the injunction and Plaintiffs
3  have failed to offer an adequate explanation for their failure to seek timely relief.  It
4  would therefore be an abuse of this Court's discretion to decline to order a bond.
5  *See Frank's GMC Truck Center, Inc. v. General Motors Corp.*, 847 F.2d 100, 103
6  (3d Cir. 1988) (holding that "absent circumstances where there is no risk of
7  monetary loss to the defendant, the failure of a district court to require a successful
8  applicant to post a bond constitutes reversible error").  Instead, in the unlikely event
9  this Court is inclined to issue a preliminary injunction, it should require the
10  Plaintiffs to post a bond in excess of $5,000,000 to cover the harm to UMG should
11  the injunction be found to have been improvidently entered.

12  **VII.  CONCLUSION**

13       For the reasons stated herein, and in the Oppositions filed by other
14  Defendants, this Court should deny Plaintiffs' Motion and decline to issue the
15  requested Preliminary Injunction.  In the alternative, should this Court issue a
16  preliminary injunction, UMG respectfully requests that Plaintiffs be required to post
17  a bond in excess of $5,000,000.

18
19  DATED: January 18, 2011            Respectfully submitted,
20
                                     CALDWELL LESLIE & PROCTOR, PC
21                                   LINDA M. BURROW
                                     HEATHER PEARSON
22
23                                   By _____/s/_____
                                           LINDA M. BURROW
24                                   Attorneys for Defendants
                                     UMG RECORDINGS, INC. and INTERSCOPE
25                                   RECORDS
26
27
28

CALDWELL
LESLIE &
PROCTOR

-18-