**BRYAN CAVE LLP**
Jonathan Pink, California Bar No. 179685
3161 Michelson Drive, Suite 1500
Irvine, California 92612-4414
Telephone: (949) 223-7000
Facsimile: (949) 223-7100
E-mail: jonathan.pink@bryancave.com

**BRYAN CAVE LLP**
Kara E. F. Cenar, *(Pro Hac Vice)*
Mariangela M. Seale, *(Pro Hac Vice)*
161 North Clark Street, Suite 4300
Chicago, IL 60601-3315
Telephone: (312) 602-5000
Facsimile: (312) 602-5050
E-mail: kara.cenar@bryancave.com
        merili.seale@bryancave.com

**McPHERSON RANE LLP**
Edwin F. McPherson, California Bar No. 106084
Tracy B. Rane, California Bar No. 192959
1801 Century Park East, 24th Floor
Los Angeles, California 90067
E-mail: emcpherson@mcphersonrane.com ; trane@mcphersonrane.com

Attorneys for DefendantsWILLIAM ADAMS; ALLAN PINEDA; and JAIME
GOMEZ, all individually and collectively as the music group THE BLACK EYED
PEAS; JAIME MUNSON a/k/a Poet Name Life; will.i.am music, llc; TAB
MAGNETIC PUBLISHING; CHERRY RIVER MUSIC CO.; JEEPNEY MUSIC,
INC.; STACY FERGUSON p/k/a FERGIE, HEADPHONE JUNKIE
PUBLISHING, LLC and EMI APRIL MUSIC PUBLISHING, INC.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

| | |
|---|---|
| EBONY LATRICE BATTS, an individual a/k/a Phoenix Phenom; and MANFRED MOHR, an individual, | Case No. CV10-8123 JFW(RZx) |
| Plaintiffs, | Hon. John F. Walter<br>Courtroom 16 |
| v. | **DEFENDANTS' JOINT OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** |
| WILLIAM ADAMS, JR., STACY FERGUSON; ALLAN PINEDA; and JAIME GOMEZ, all individually and collectively as the music group The Black Eyed Peas; JAIME MUNSON | |

IR01DOCS473626.1

BRYAN CAVE LLP
3161 MICHELSON DRIVE, SUITE 1500
IRVINE, CALIFORNIA 92612-4414

1  a/k/a Poet Name Life; UMG
   RECORDINGS, INC.; INTERSCOPE
2  RECORDS; EMI APRIL MUSIC,
   INC.; HEADPHONE JUNKIE
3  PUBLISHING, LLC; WILL.I.AM.
   MUSIC, LLC; JEEPNEY MUSIC,
4  INC.; TAB MAGNETIC
   PUBLISHING; and CHERRY RIVER
5  MUSIC CO.,

6              Defendants.

Date:  February 7, 2011
Time:  1:30 p.m.
Dept.: 16

Complaint Filed:    October 28, 2010
Trial Date:         Not Assigned

BRYAN CAVE LLP
3161 MICHELSON DRIVE, SUITE 1500
IRVINE, CALIFORNIA 92612-4414

IR01DOCS473626.1

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

# Table of Contents

**Page**

I.   PLAINTIFFS CANNOT SATISFY STANDARDS GOVERNING ISSUANCE OF PRELIMINARY INJUNCTIVE RELIEF ........................... 2

   A.   Plaintiffs Cannot Demonstrate a Likelihood of Success. ..................... 3

      1.   Plaintiffs Cannot Establish Access .............................................. 4

      2.   Plaintiffs Cannot Show Substantial Similarity .......................... 5

         (a)   The Extrinsic Test ........................................................... 6

         (b)   Intrinsic Test. ................................................................ 15

         (c)   Independent creation ..................................................... 17

   B.   Plaintiffs Fail to Establish Irreparable Harm. ................................... 19

   C.   A Balance of Hardships Weighs in Favor of Defendants. ................. 22

   D.   An Injunction Would Not Serve the Public Interest .......................... 22

II.  PLAINTIFF SHOULD NOT BE PERMITTED TO DEVIATE FROM FED. R. CIV. P. 65(C) ................................................................................... 23

BRYAN CAVE LLP
3161 MICHELSON DRIVE, SUITE 1500
IRVINE, CALIFORNIA 92612-4414

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

1

**Table of Authorities**

2

**Page(s)**

3

**Cases**

*A&M Records, Inc. v. Napster, Inc.*,
   239 F.3d 1004 (9th Cir. 2001) ...................................................24

*Abend v. MCA, Inc.*,
   863 F.2d 1465 (9th Cir. 1988) ..............................................21, 23

*American Trucking Associations, Inc. v. City of Los Angeles*,
   559 F.3d 1046 (9th Cir. 2009) ...............................................2, 3

*Apple Computer, Inc. v. Microsoft, Inc.*,
   35 F.3d 1435 (9th Cir. 1994) ...............................6, 7, 11, 15

*Arden v. Columbia Pictures Industries, Inc.*,
   908 F. Supp. 1248 (S.D.N.Y. 1995) ..........................................8

*Arnstein v. Porter*,
   154 F.2d 464 (2d Cir. 1946) ..................................................6

*Atari, Inc. v. North American Philips Consumer Electronic Corp.*,
   672 F.2d 607 (7th Cir.), *cert. denied*, 459 U.S. 880 (1982) .................8

*Berkic v. Crichton*,
   761 F.2d 1289 (9th Cir. 1985) ...............................................15

*Builder's World, Inc. v. Marvin Lumber & Cedar, Inc.*,
   482 F. Supp. 2d 1065 (E.D. Wis. 2007) ......................................24

*California v. American Stores*,
   495 U.S. 271 (1990) ........................................................19

*Cavalier v. Random House, Inc.*,
   297 F.3d 815 (9th Cir. 2002) ..............................................6, 7

*Chase-Riboud v. Dreamworks, Inc.*,
   987 F. Supp. 1222 (C.D. Cal. 1997) .........................................22

*ConFold Pacific, Inc. v. Polaris Industries, Inc.*,
   433 F.3d 952 (7th Cir. 2006) ...............................................18

*Continuum Co. v. Incepts, Inc.*,
   873 F.2d 801 (5th Cir. 1989) ...............................................24

*CyberMedia, Inc. v. Symantec Corp.*,
   19 F. Supp. 2d 1070 (N.D. Cal. 1998) .......................................24

*Data East USA, Inc. v. Epyx, Inc.*,
   862 F.2d 204 (9th Cir. 1988) ................................................5

*Dimmie v. Carey*,
   88 F. Supp. 2d 142 (S.D.N.Y. 2000) ..........................................4

*eBay Inv. v. MercExchange, L.L.C.*,
   547 U.S. 388 (2006) .....................................................19, 20

*Express, LLC v. Fetish Group, Inc.*,
   424 F. Supp. 2d 1211 (C.D. Cal. 2006) ......................................15

*Feist Publications, Inc. v. Rural Telephone Service Co.*,
   *Inc.*, 499 U.S. 340 (1991) ...........................................3, 5, 9

4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Bryan Cave LLP*
*3161 Michelson Drive, Suite 1500*
*Irvine, California 92612-4414*

ii

*Fogerty v. Fantasy, Inc.*,
   510 U.S. 517 (1994) ...................................................................................... 23

*Funky Films, Inc. v. Time Warner Entertainment Co., L.P.*,
   462 F.3d 1072 (9th Cir. 2006) .................................................................... 15

*Gaste v. Kaiserman*,
   863 F.2d 1061 (2d Cir. 1988) ...................................................................... 12

*Gillette Co. v. Ed Pinaud, Inc.*,
   178 F. Supp. 618 (S.D.N.Y. 1959) ............................................................. 21

*Hearn v. Meyer*,
   664 F. Supp. 832 (S.D.N.Y. 1987) ............................................................... 8

*High-Tech Medical Instrumentation, Inc. v. New Image Indus., Inc.*,
   49 F.3d 1551 (Fed. Cir. 1995) .................................................................... 20

*Hologic, Inc. v. Senorx, Inc.*,
   2008 WL 1860035 (N.D. Cal. April 25, 2008) ......................................... 19

*In re Microsoft Corporation Antitrust Litigation*,
   333 F.3d 517 (4th Cir. 2003) ...................................................................... 19

*International Jensen, Inc., v. Metrosound U.S.A., Inc.*,
   4 F.3d 891 (9th Cir. 1993) .......................................................................... 22

*Intersong-USA v. CBS, Inc.*,
   757 F. Supp. 274 (S.D.N.Y. 1991) ............................................................. 13

*Jason v. Fonda*,
   698 F.2d 966 (9th Cir. 1982) .................................................................. 4, 5

*Johnson Controls, Inc. v. Phoenix Control Systems, Inc.*,
   886 F.2d 1173 (9th Cir. 1989) .................................................................... 16

*Johnson v. Gordon*,
   409 F.3d 12 (1st Cir. 2005) .................................................................... 8, 13

*Kouf v. Walt Disney Pictures & Television*,
   16 F.3d 1042 (9th Cir. 1994) ...................................................................... 15

*LucasFilm Ltd. v. Media Ltd. v. Media Market Group, Ltd.*,
   182 F. Supp. 2d 897 (N.D. Cal. 2002) ....................................................... 22

*Mattel, Inc. v. MGA Entertainment, Inc.*,
   616 F.3d 904, 917 (9th Cir. 2010) .......................................................... 5, 6, 7

*McRae v. Smith*,
   968 F. Supp. 559 (D. Colo. 1997) .............................................................. 13

*Mead Johnson & Co. v. Abbott Labs.*,
   201 F.3d 883 (7th Cir. 2000) ...................................................................... 24

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*,
   518 F. Supp. 2d 1197 (C.D. Cal. 2007) ..................................................... 19

*Metro-Media Broadcasting Corp. v. MGM/UA Entertainment Co.*,
   611 F. Supp. 415 (C.D. Cal. 1985) ....................................................... 20, 21

*Murray Hill Publications, Inc. v. Twentieth Century Fox Film Corp.*,
   361 F.3d 312 (9th Cir. 2004) ........................................................................ 3

*Oakland Tribune, Inc. v. Chronicle Publ. Co.*,
   762 F.2d 1374 (9th Cir. 1985) ............................................................... 20, 21

BRYAN CAVE LLP
3161 MICHELSON DRIVE, SUITE 1500
IRVINE, CALIFORNIA 92612-4414

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

*Planesi v. Peters,*
  2005 WL 1939885 (C.D. Cal. Aug. 15, 2005) ................................................. 9

*Playboy Enters. v. Netscape Communications Corp.,*
  55 F. Supp. 2d 1070 (C.D. Cal. 1999), *aff'd,* 202 F.3d 278 (9th Cir. 1999) .......... 20

*Protech Diamond Tools, Incorporation v. Liao, No. C 08-3684 SBA,*
  2009 WL 1626587 (N.D. Cal. June 8, 2009) ................................................. 21

*Reader's Digest Ass'n v. Conservative Digest, Inc.,*
  821 F.2d 800 (D.C. Cir. 1987) .................................................................. 9

*Religious Technology Center v. Netcom On-Line Communication Services,
Inc.,*
  923 F. Supp. 1231 (N.D. Cal. 1995) ......................................................... 24

*Roth Greeting Cards v. United Card, Co.,*
  429 F.2d 1106 (9th Cir. 1970) ............................................................. 3, 9

*S.S. Enterprises v. India Sari Palace Inc.,*
  1983 WL 1129 (S.D.N.Y. 1983) ........................................................ 19, 22

*Salinger v. Colting,*
  607 F.3d 68 (2d. Cir. 2010) .................................................................. 19

*Sampson v. Murray,*
  415 U.S. 61 (1974) ............................................................................ 21

*Shaw v. Lindheim,*
  809 F. Supp. 1393 (C.D. Cal. 1992) .......................................................... 4

*Shaw v. Lindheim,*
  919 F.2d 1353 (9th Cir. 1990) ................................................................ 9

*Sheldon v. Metro-Goldwyn Pictures,*
  81 F.2d 49 (2d Cir. 1936) .................................................................... 18

*Sid & Marty Krofft Television Productions, Inc. v. McDonald's Corp.,*
  562 F.2d 1157 (9th Cir. 1977) ............................................................ 4, 15

*Swirsky v. Carey,*
  376 F.3d 841 (9th Cir. 2004) .......................................................... 3, 5, 6, 7

*Three Boys Music Corp. v. Bolton,*
  212 F.3d 477 (9th Cir.2000) .......................................................... 6, 11, 16

*Tisi v. Patrick,*
  97 F. Supp. 2d 539 (S.D.N.Y. 2000) .................................................. 4, 5, 13

*Trek Leasing, Inc. v. United States,*
  Fed. Cl. 8 (Fed. Cl. 2005) ..................................................................... 5

*Trust Co. Bank v. Putnam Publ'g Group, Inc.,*
  5 U.S.P.Q.2d 1874 (C.D. Cal. 1988) ....................................................... 23

*Weygand v. CBS, Inc.,*
  43 USPQ2d 1120 (C.D. Cal. 1997) .......................................................... 4

*Winter v. Natural Resources Defense Council, Inc.,*
  55 U.S. 7 (2008) .......................................................................... 19, 20

**Statutes**
17 U.S.C. § 102 ...................................................................................... 6

**Other Authorities**
Melville B. Nimmer & David Nimmer, Nimmer On Copyright § 13.01[B] ........ 5, 18

BRYAN CAVE LLP
3161 MICHELSON DRIVE, SUITE 1500
IRVINE, CALIFORNIA 92612-4414

iv

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

MELVILLE B. NIMMER & DAVID NIMMER, NIMMER ON COPYRIGHT § 14.06 (2011)......................................................................................19

THE OXFORD ENGLISH DICTIONARY, OED ONLINE (2d ed. 1989), accessed at http://www.oed.com/view/Entry/131486?redirectedFrom=onomatopoeia (last visited Jan. 12, 2011) ..........................................................................8

WILLIAM F. PATRY, PATRY ON COPYRIGHT § 9:235 (2011)........................................6

**Rules**
Fed. R. CIv. P. 65(c) .................................................................................23, 24

Fed. R. Evid 106 ............................................................................................8

**Regulations**
37 C.F.R. § 202.1 ...........................................................................................8

BRYAN CAVE LLP
3161 MICHELSON DRIVE, SUITE 1500
IRVINE, CALIFORNIA 92612-4414

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2       Plaintiffs asserts a single claim of copyright infringement: that Defendants'

3 musical composition, "Boom Boom Pow" ("BBP"), infringes "Boom Dynamite"

4 ("BD"). After a nearly two year delay (one of which was spent "trying" their case in

5 the media, sometimes under an alias identity, and using the publicity to advance

6 sales of their own music), Plaintiffs turn to this Court seeking the extraordinary

7 equitable relief of a preliminary injunction. This request should be denied.

8       Competent musicological evidence shows that there is no copyright

9 infringement and that Plaintiffs' assertions are based on non-copyrightable,

10 commonplace musical elements, including the repeated use of the word "Boom" in

11 the lyrics. Denial of the Motion is also proper because Plaintiffs have made no

12 showing of irreparable harm, and their lengthy delay is coupled with unclean hands.

13 All *required* factors recognized by the Ninth Circuit weigh against an injunction, as

14 do general principles of equity. Accordingly, Plaintiffs' Motion must be denied.

15

## Statement of Facts[1] -- *Plaintiffs' Two Year Delay in Filing this Motion*:

16       Plaintiffs first heard BBP in March 2009. (Batts Decl., ¶¶ 3-6; Mohr Decl., ¶¶

17 3-6.) Plaintiffs then waited *ten months* before filing a lawsuit in Illinois on January

18 26, 2010.[2] (Cenar Decl., ¶5.) Plaintiffs showed no diligence in pursuing the merits

19 of that lawsuit and instead tried their case to the media. (Cenar Decl., ¶¶3-4, 7-12.)

20 They did not serve the Defendants with the Complaint, and did not move for

21 injunctive relief. (Cenar Decl., ¶10.)[3] They sought continuances, delayed amending

BRYAN CAVE LLP
3161 MICHELSON DRIVE, SUITE 1500
IRVINE, CALIFORNIA 92612-4414

---

[1] Defendants submit the Declaration and Report of Laurence Ferrara to show the grave deficiencies in the Plaintiffs submission on the substantive musicological issues, and to provide substantial musicological evidence proving no copyright infringement.

[2] That was filed in the United States District Court for the Northern District of Illinois Eastern Division.

[3] Far from seeking to stop the BBP due to "irreparable injury," Plaintiffs treated the matter as a publicity campaign, issuing press releases, giving radio interviews, and injecting into the public (alias identification) false claims of "expert" reports, theft and victimization. (Cenar Decl., ¶¶29-31.) Indeed, six days before filing that lawsuit, Plaintiffs' released BD on iTunes. (Cenar Decl., ¶29.)

1

1  pleadings, and ultimately their complaint was dismissed for insufficient pleadings.

2  In that dismissal, the Court allowed Plaintiffs nearly a month to re-file in a proper

3  jurisdiction.  The day before that deadline, Plaintiffs approached Defendants to

4  "settle."  (Cenar Decl., ¶¶12-18.)

5        Not surprisingly, settlement discussions were a short lived few months.

6  Plaintiffs' final demand, on August 27, 2010, threatened an immediate motion for

7  injunctive relief if the proffered settlement was not accepted within 7 days.

8  Defendants rejected that demand on August 27.  (Cenar Decl., ¶20.)  Plaintiffs still

9  did not refile their suit or seek injunctive relief.  (*Id.*, ¶21.)

10        Eight weeks later, Plaintiffs filed the instant lawsuit.  No motion for

11  injunctive relief preceded or accompanied that filing.  (Cenar Decl., ¶¶ 21-23.)

12  Again Plaintiffs turned to the press to try the case in the media.  (Cenar Decl., ¶   )

13  Finally, on January 10, 2010, nearly two years after Plaintiffs first heard BBP, they

14  ask this Court to enjoin the work's further performance and distribution.  (*Id.*, ¶23.)

15        Plaintiffs' publicity campaign launched during their self-imposed two year

16  delay speaks volumes about the lack of irreparable harm and evidences an intent to

17  benefit from the delay.  It also evidences Plaintiffs' unclean hands.  By airing this

18  fabricated saga in the press, posing as "disinterested third parties" purportedly

19  evaluating the merits of their claim, and seeking to taint and influence public

20  perception, Plaintiffs are barred from invoking the equities of this Court.

21                       **<u>Argument</u>**

22  **I.**   **<u>PLAINTIFFS CANNOT SATISFY STANDARDS GOVERNING</u>**

23  **<u>ISSUANCE OF PRELIMINARY INJUNCTIVE RELIEF</u>**

24        Under Ninth Circuit authority, a plaintiff needs to prove four factors to

25  establish entitlement to preliminary injunctive relief; merely demonstrating a

26  possibility of irreparable harm does not suffice.  *See, American Trucking*

27  *Associations, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009).

28        While Plaintiffs' motion relies on earlier cases that have suggested a lesser

BRYAN CAVE LLP
3161 MICHELSON DRIVE, SUITE 1500
IRVINE, CALIFORNIA 92612-4414

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

BRYAN CAVE LLP
3161 MICHELSON DRIVE, SUITE 1500
IRVINE, CALIFORNIA 92612-4414

1   standard (Mot. at 2), they are no longer the law.  Under *American Trucking*, "[a]

2   plaintiff seeking a preliminary injunction must establish that [1] he is likely to

3   succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence

4   of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an

5   injunction is in the public interest.  To the extent that our cases have suggested a

6   lesser standard, they are no longer controlling, or even viable."  *American Trucking,*

7   *supra,* 559 F.3d at 1052 (emphasis added).  Plaintiffs have not and cannot make the

8   required showing under the *American Trucking* standard.

9   **A.**     **Plaintiffs Cannot Demonstrate a Likelihood of Success.**

10      Plaintiffs advance but one claim for relief: copyright infringement of a

11  musical composition.  To establish their claim, Plaintiffs must prove "(1) ownership

12  of a valid copyright, and (2) copying of constituent elements of the work that are

13  original."  *Feist Publications, Inc. v. Rural Telephone Service Co., Inc.*, 499 U.S.

14  340, 361 (1991); *accord Swirsky v. Carey*, 376 F.3d 841, 844 (9th Cir. 2004).

15      In cases where the alleged infringement is of the reproduction right, the

16  plaintiff must prove that the infringer copied the plaintiff's work either through

17  evidence of: (1) direct copying or (2) circumstantial evidence of copying, *i.e.*, access

18  and substantial similarity.  *Murray Hill Publications, Inc. v. Twentieth Century Fox*

19  *Film Corp.*, 361 F.3d 312, 316 (9th Cir. 2004).  Direct evidence of copying is rare in

20  most copyright actions, therefore the plaintiff usually establishes copying

21  circumstantially.  *Swirsky*, 376 F.3d 844; *Roth Greeting Cards v. United Card, Co.*,

22  429 F.2d 1106, 1110 (9th Cir. 1970).

23      Assuming Plaintiffs can establish ownership of the composition BD (a point

24  that Defendants do not concede), they cannot demonstrate that Defendants copied

25  that work.  First, Plaintiffs cannot establish that Defendants had access to their work.

26  Second, the subject works contain no similarities that are protected by copyright,

27  and as such, are not substantially similar.  Finally, BBP was created independently,

28  and owes its compositional fingerprint to The Black Eyed Peas' own, 2005 work.

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

### 1.    Plaintiffs Cannot Establish Access

Plaintiffs have not and cannot establish that Defendants had access to BD. Access is shown through evidence the alleged infringer actually read or heard plaintiff's work, or had a reasonable opportunity to do the same. *Sid & Marty Krofft Television Productions, Inc. v. McDonald's Corp.*, 562 F.2d 1157, 1163 (9th Cir. 1977).  Asserting facts which, even if accepted as true, would establish nothing more than the bare *possibility* that someone who knew the Defendants saw or heard the work at issue is <u>insufficient</u> to prove access. *Jason v. Fonda*, 698 F.2d 966, 967 (9th Cir. 1982); *see also Shaw v. Lindheim*, 809 F. Supp. 1393 (C.D. Cal. 1992) (relationship between two "co-creators" of allegedly infringing television series held insufficient to prove access); *Weygand v. CBS, Inc.*, 43 USPQ2d 1120 Copyright L. Rep. (CCH)  27,660 (C.D. Cal. 1997) (access by producer not imputed to co-producer).  The submission of an unsolicited demo tape to a record company does not establish access by a recording artist. *Tisi v. Patrick*, 97 F. Supp. 2d 539, 547 (S.D.N.Y. 2000); *Dimmie v. Carey*, 88 F. Supp. 2d 142 (S.D.N.Y. 2000).

In support of their claim of access, Plaintiffs have submitted inadmissible and unreliable hearsay, hearsay within hearsay, and assertions made without corroborating evidence.  Worse, the uncorroborated hearsay relates to unsolicited submissions made to people <u>other than</u> The Black Eyed Peas.  Thus, even assuming the hearsay is correct, it does not establish access by The Black Eyed Peas.  In the declaration of Troy Marshall ("Marshall Decl."), Mr. Marshall denies having received BD, ever giving that song to any member of The Black Eyed Peas, or even being in a position to do so.  (See DKT, Marshall Decl.)

None of the other allegations of access are substantiated.  The posting of videos on YouTube by an unknown signer or artist, or the limited two month playing of the song on the radio in one single city of the United States, and limited foreign licenses in other countries can only be described as the modern day equivalent of looking for a needle in a haystack – where the alleged seeker does not

BRYAN CAVE LLP
3161 MICHELSON DRIVE, SUITE 1500
IRVINE, CALIFORNIA 92612-4414

4

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

1   know the needle exists, and isn't looking for it.[4]   A "bare possibility" of Defendants

2   having seen Plaintiffs' work does not establish access as a matter of law.  *Jason,*

3   *supra,* 698 F.2d at 967.  Neither does providing unsolicited copies to record labels.

4   *Tisi, supra,* 97 F. Supp. 2d at 547.[5]

5   ## 2.   Plaintiffs Cannot Show Substantial Similarity

6       "Substantial similarity" is a term of art in copyright law, and refers to the

7   copying of a quantum of plaintiff's work sufficient to generate liability.  *See, Trek*

8   *Leasing, Inc. v. United States*, Fed. Cl. 8, 11 (Fed. Cl. 2005), citing Melville B.

9   Nimmer & David Nimmer, Nimmer On Copyright § 13.01[B] ("Plaintiff must prove

10  actionable copying; 'copying as a legal proposition-whether the defendant's work is

11  substantially similar to plaintiff's work such that liability may attach.'").

12      A key feature of actionable copying is that it be based on the appropriation of

13  copyrightable material; a copyright plaintiff may not rely on elements that are not

14  protected by copyright law.  *See, Mattel, Inc. v. MGA Entertainment, Inc.*, 616 F.3d

15  904, 917 (9th Cir. 2010) ("[A] finding of substantial similarity between two works

16  can't be based on similarities in unprotectable elements."); *Data East USA, Inc. v.*

17  *Epyx, Inc.*, 862 F.2d 204, 209 (9th Cir. 1988) (clear error when district court

18  determined substantial similarity existed based on unprotected elements); *Feist,*

19  *supra*, 499 U.S. at 363-64 (no copyright liability can attach through the copying of

20  material that is not sufficiently original to merit copyright protection).

21      In the Ninth Circuit, a bifurcated test is used to determine whether two works

22  are substantially similar: the extrinsic/intrinsic test.  *See, Swirsky*, *supra*, 376 F.3d at

---

23  [4] As of January 2008 – when Plaintiffs claim to have uploaded their music video –
24  users were uploading 10 hours of video on the site every minute.  By October, that
    number had risen to 15 hours.  By May 2009 – admittedly two months after the
25  release of "Boom Boom Pow," that number had risen to 20 hours of video every
    minute.  Given this huge quantity of content, it is unreasonable to assume the Black
26  Eyed Peas ever saw Plaintiffs' video and Plaintiffs have provided no compelling
    evidence to the contrary.  *See* http://mashable.com/2010/05/17/youtube-2-billion-
27  views/.
    [5] As set forth in the declaration of Troy Marshall, Mr. Marshall never provided any
28  of The Black Eyed Peas with a copy of Plaintiffs' work.  (DKT, Marshall Decl.)

BRYAN CAVE LLP
3161 MICHELSON DRIVE, SUITE 1500
IRVINE, CALIFORNIA 92612-4414

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

BRYAN CAVE LLP
3161 MICHELSON DRIVE, SUITE 1500
IRVINE, CALIFORNIA 92612-4414

845 ("In determining whether two works are substantially similar, we employ a two-part analysis: an objective extrinsic test and a subjective intrinsic test."); *Mattel*, 616 F.3d at 913 (same).[6]  A copyright plaintiff in the Ninth Circuit must satisfy <u>both</u> the extrinsic and intrinsic tests to succeed.  *Swirsky*, 376 F.3d at 845 (a "jury may not find substantial similarity without evidence on both the extrinsic and intrinsic tests") (citation omitted); *Cavalier v. Random House, Inc*., 297 F.3d 815, 824 (9th Cir. 2002).  Plaintiffs cannot satisfy either test; thus their claim of infringement fails.

### (a)   <u>The Extrinsic Test</u>

The purpose of the extrinsic test is to "consider[] whether two works share a similarity of ideas and expression as measured by external, objective criteria."  *Swirsky*, 376 F.3d at 845; *Cavalier*, 297 F.3d at 822 ("'extrinsic test' is an objective comparison of specific expressive elements").  It is characterized by analytical dissection, "which requires breaking the works down into their constituent elements, and comparing those elements for proof of copying as measured by substantial similarity." *Swirsky*, at 845 (citation omitted).  The extrinsic test permits for expert testimony to the extent such testimony is helpful in the analytical dissection.  *Apple Computer, Inc. v. Microsoft, Inc*., 35 F.3d 1435, 1442 (9th Cir. 1994); *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 485(9th Cir.2000).

The most important function of the extrinsic analysis is to catalogue the similarities of the works at issue, and determine which elements are unprotected by copyright, be it due to insufficient originality, scènes à faire, or otherwise.[7]  *See,*

---

[6] Plaintiffs here cites to *Arnstein v. Porter*, 154 F.2d 464 (2d Cir. 1946) when attempting to sketch how the intrinsic stage of the Ninth Circuit's substantial similarity test is applied.  (Mot at 15.)  Plaintiffs are misguided.  *Arnstein* sets forth the substantially similarity analysis that is employed in the *Second* Circuit, the constituent parts of which focus on elements different from the Ninth Circuit's test.  Indeed, one copyright commentator has called out "the chasm between the Ninth Circuit's and the Second Circuit's approach[es]" to substantial similarity.  WILLIAM F. PATRY, PATRY ON COPYRIGHT § 9:235 (2011).

[7] 17 U.S.C. § 102 provides that "[i]n no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work."

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

BRYAN CAVE LLP
3161 MICHELSON DRIVE, SUITE 1500
IRVINE, CALIFORNIA 92612-4414

1   *Mattel*, 616 F.3d at 913.  Significantly, and contrary to the law, Plaintiffs'

2   submission does not contain any attempt to undertake this required analysis, and

3   consequently their methodology is flawed.  (*See*, Ferrara Decl., ¶¶10-17) (as to

4   methodology).  Plaintiffs merely "list similarities.[8]"  The unprotected elements of

5   the works must be filtered out before the similarity analysis can proceed to the

6   intrinsic stage.  *Apple*, 35 F.3d at 1446 ("the unprotectable elements have to be

7   identified, or filtered, before the works can be considered as a whole."); *Mattel*, 616

8   F.3d at 919 (reversing grant of injunction, holding court erred when it "fail[ed] to

9   filter out all the unprotectable elements of [plaintiff's work]"); *Cavalier*, 297 F.3d at

10  822 ("when applying the extrinsic test, a court must filter out and disregard the non-

11  protectable elements in making its substantial similarity determination.").

12      As the Ninth Circuit has noted, "music is comprised of a large array of

13  elements, some combination of which is protectable by copyright." *Swirsky*, 376

14  F.3d at 849.  Therefore, when analyzing the similarity of musical compositions

15  under the extrinsic test, a variety of compositional elements must be considered,

16  including: melody, harmony, rhythm, timbre, structure, instrumentation, meter,

17  tempo, and lyrics.  *Id.*  Consideration of these elements in **BD** and BBP reveals that

18  the works share *no similarities* of protected elements As such, Plaintiffs cannot

19  satisfy the extrinsic test.

20      **Literary Devices and Short Phrases/Words Are Not Protected.**  The

21  Plaintiffs' flagship argument of alleged actionable copying is the chorus—*i.e.*,

22  use of the word "boom."  Both works contain a chorus that use "*boom*" in repetition,

23  but this is one similarity among many differences.  In BD one hears the lyrics :

24      I got that boom dynamite.  I make it bang all night
        I got that boom dynamite.  I make it bang all night.

25      I got that boom boom boom boom boom.

26      I got that boom boom boom boom boom.

27  _____

28  [8] The listings submitted by Plaintiffs are in many instances wrong, and, among
    Plaintiffs' declarants, they are inconsistent with each other.

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

In contrast, an example of the chorus in BBP is as follows:

Boom boom boom.  Gotta get get boom boom boom.
Gotta get get boom boom boom.  Gotta get get boom boom boom.
Gotta get get boom boom boom that boom boom boom.
That boom boom boom, boom boom boom. [9]

But reliance on the word "*boom*" isn't even a superficially appealing argument in light of established law.  "Boom" as is used in Plaintiffs' work is a classic example of onomatopoeia.[10]  Throughout the composition it is repeatedly synchronized with a kick drum (enhanced with a sample of an explosion) to create—not coincidentally—a thunderous "boom."  An unoriginal use of literary devices such as this, however, merits no copyright protection.  *See, Atari, Inc. v. North American Philips Consumer Electronic Corp.*, 672, F.2d 607, 16 (7th Cir.), *cert. denied*, 459 U.S. 880 (1982) ("literary devices are not protected by copyright."); *Hearn v. Meyer*, 664 F. Supp. 832, 849-50 (S.D.N.Y. 1987) (dismissing copyright claims that were based on non-copyrightable literary devices); *Arden v. Columbia Pictures Industries, Inc.*, 908 F. Supp. 1248, 1261 (S.D.N.Y. 1995) ("Literary devices, however, cannot be copyrighted."). Therefore, under the Ninth Circuit's extrinsic test, this central element of Plaintiffs' work must be filtered out from the analysis.

Plaintiffs fare no better when pointing to short phrases and particular configurations of words to establish infringement, *e.g.*, "*make the beat go*" versus "*let the beat rock*" and "*I got that*" versus "*gotta get get*."  See, 37 C.F.R. § 202.1 (words and short phrases such as names, titles and slogans are <u>not</u> protected by copyright.); *Johnson v. Gordon*, 409 F.3d 12, 24 (1st Cir. 2005) (finding that

---

[9] *See also* Defendants' Fed. R. Evid 106 objection, wherein several other songs, predating Plaintiffs, share this common onomatopoeia; Ferrara Decl., ¶ 1, Sch. 1.

[10] Onomatopoeia is "[t]he formation of a word from a sound associated with the thing or action being named; the formation of words imitative of sounds." THE OXFORD ENGLISH DICTIONARY, OED ONLINE  (2d ed. 1989), accessed at http://www.oed.com/view/Entry/131486?redirectedFrom=onomatopoeia (last visited Jan. 12, 2011).

BRYAN CAVE LLP
3161 MICHELSON DRIVE, SUITE 1500
IRVINE, CALIFORNIA 92612-4414

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

BRYAN CAVE LLP
3161 MICHELSON DRIVE, SUITE 1500
IRVINE, CALIFORNIA 92612-4414

hundreds of registered songs captured the same sentiment and verbiage of a lyric and title used in a composition and hence, was "too trite to warrant copyright protection."); *Shaw v. Lindheim*, 919 F.2d 1353, 1362 (9th Cir. 1990) (title of "The Equalizer" television show not protected); *Planesi v. Peters*, 2005 WL 1939885, at *1 (C.D. Cal. Aug. 15, 2005) ("words and short phrases are not subject to copyright").  Putting aside the fact that the foregoing "phrases" cannot support a finding of infringement, the words and short phrases at issue in the parties' works are not even the same.

**"Boom Dynamite" is Not Original to Plaintiffs.**  Even more detrimental to Plaintiffs' claim is that the particularized expression of the words "Boom Dynamite," including the rhythm in which the words are cradled, is not original to them. "Original, as the term is used in copyright, means only that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal level of creativity." *Feist*, *supra*, 499 U.S. at 345; *Reader's Digest Ass'n v. Conservative Digest, Inc.*, 821 F.2d 800, 806 F.2d 800, 806 (D.C. Cir. 1987) (originality means "that the work owes its origins to the author – *i.e.*, that the work is independently created rather than copied from other works.").  Originality is a constitutional requirement of copyright protection, and as such, an author may not claim copyright protection in elements that are not original to his or her work. *Feist*, 499 U.S. at 347 ("The originality requirement is *constitutionally mandated* for all works.") (emphasis in original) (citation omitted); *Roth*, 429 F.2d at 1109 ("In order to be copyrightable, the work must be the original work of the copyright claimant.").

Here, Plaintiffs did not create the central element of their work: the "Boom Dynamite" chorus and accompanying rhythm.  Rather, they *copied* the popular "Boom Dynamite" cheer when creating their work.  Notably, that cheer has existed since at least 2000,[11] and possibly earlier.  A portion of its text, dating from a 2004

---

[11] (Ferrara Decl., ¶1, Sch. 1 at 33-34.)

1  version,[12] is as follows:

2    Boom dynamite, **our team is boom dynamite**. Our team is tick (8x) Boom
3    dynamite, **your team is boom dynamite**. Your team is tick (8x) sssssssss- you
     team ain't got no boom.

4  When performed, the bolded portions of the cheer are articulated in a manner that is
5  rhythmically the same as the corresponding passage of Plaintiffs' work.[13] The only
6  difference is the text for the "pickup" leading to words "Boom Dynamite": "our
7  team is" v. "I got that."

8      As further evidence of the widespread prior use of the "Boom Dynamite"
9  cheer, one need only conduct a brief Internet search.  Such a search yields *hundreds*
10 of references to the "Boom Dynamite" cheer, its text, and performances thereof.  At
11 least one YouTube video was posted on YouTube on January 17, 2007, several
12 months before Plaintiffs' stated May 2007 creation date of "Boom Dynamite."[14]
13 Notably, the cheer also appeared in a musical composition entitled "Cheer for Me,"
14 featured in the 2000 cheerleading film, "Bring it On," and included on the film's
15 soundtrack album.  In that work, the articulation of the cheer is rhythmically and
16 melodically the same as the corresponding portion of Plaintiffs' work.[15]

17     The fact that Plaintiffs lifted the particularized expression of the "Boom
18 Dynamite" cheer is corroborated by their "Boom Dynamite" music video, which
19 features Ms. Batts in a *cheerleading* outfit, performing her work with a cheerleading
20 squad in what appears to be a high school gymnasium. This appropriation of the
21 "Boom Dynamite" cheer is not insubstantial.  Indeed, in serving as the title and hook
22 of Plaintiffs' work, it is the work's most identifiable aspect.  But that use, and
23 specifically, the words "Boom Dynamite" along with the rhythmic attack points

24 [12] *See*, University of South Dakota website, entitled: "Cheerleading Chants and
25 Cheers."  That site is accessible at http://people.usd.edu/~kvoyles/cheerlist.htm

26 [13] (Ferrara Decl., ¶1, Sch. 1 at 33.)

27 [14] http://www.youtube.com/watch?v=Zo5i_w4q7os.

28 [15] (Ferrara Decl., ¶1, Sch. 1 at 33-34.)

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

BRYAN CAVE LLP
3161 MICHELSON DRIVE, SUITE 1500
IRVINE, CALIFORNIA 92612-4414

1    thereof, are <u>not</u> original to Plaintiffs and thus must be filtered out.

2         Further, a 2003 musical composition entitled "(I Got That) Boom Boom"  ("I

3    Got That") performed by Britney Spears obviously served as source material for

4    Plaintiffs when creating their work.  The 5 words comprising the title of I Got That

5    are the first 5 words uttered in BD.  Moreover, I Got That includes many instances

6    of "boom boom boom" and "I got that boom boom."  As explained in the report of

7    Dr. Ferrara, both BD and I Got That include a lyric that can be traced to a 1982

8    composition entitled "Mickey," performed by Toni Basel.  Together, these facts

9    establish Plaintiffs were aware of I Got That when creating BD. (Ferrara Decl., ¶ 1,

10   Exh. 1. 34-37; *Id.* at ¶6.)  Elements copied from these works must be filtered from

11   BD, as Plaintiffs have no claim to copyright in material they have copied.

12        **The Similarities Do Not Satisfy the Extrinsic Test.**   Plaintiffs' experts offer

13   lists of "similarities" that purport to demonstrate that certain compositional elements

14   they claim are shared by the subject works resulted from copying.  They are listed

15   under the rubric of genre, style, tempo, meter, and length, and largely highlight

16   generic aspects of popular music.  Merely listing generic elements without

17   *explaining* how Plaintiffs' particular usage, combination, or treatment thereof: (1) is

18   original to Plaintiffs (as opposed to representing musical commonplaces) and (2)

19   appears in another work, such as BBP, offers no help in the analytical dissection of

20   the subject works.[16]  *See*, *Apple Computer, supra*, 35 F.3d at 1442; *Three Boys*

21   *Music*, 212 F.3d at 485  *see also* Ferrara Decl., ¶¶ 13-15.

22        By way of illustration, in many respects the reports proffered by Plaintiffs'

23   experts are the literary equivalent of saying that because two books tell a story that

24   include children, are slightly over 300 pages in length, are written in English,

25

26   _____

27   [16] Even more problematic is that Plaintiffs' experts improperly use their lists of
     generalities to conclude that the subject works are "substantially similar," or
     "strikingly similar," which are legal determinations that must be resolved by the
28   trier of fact.

BRYAN CAVE LLP
3161 MICHELSON DRIVE, SUITE 1500
IRVINE, CALIFORNIA 92612-4414

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

1  divided into chapters, and have paragraphs, the only possible explanation for such is

2  that one copied the other.  Under the literary equivalent of the musical analysis

3  offered by Plaintiffs and their experts, Nabakov's "Lolita" would be an infringement

4  of Faulkner's "The Sound and the Fury."  The disconnect is no less subtle when

5  Defendants' work is said to have infringed on that of Plaintiffs.

6      Without addressing Plaintiffs' self-serving classifications of genre and style

7  (which Defendants dispute), both works fall under the heading of "popular music"

8  as they are—at least in part—meant to be accessible/disseminated to a wide range of

9  people.  Given the limited musical vocabulary available to composers, it is not

10  surprising that many works—particular in popular music— contain certain

11  similarities, a fact that courts are aware of.  *See*, *Gaste v. Kaiserman*, 863 F.2d 1061,

12  1068 (2d Cir. 1988) ("we are mindful of the limited number of notes and chords

13  available to composers and the resulting fact that common themes frequently

14  reappear in various compositions, especially in popular music.").  Indeed, some of

15  the generic elements from popular music, or in prior art, that are found in Plaintiffs'

16  work include:

17  
18  • Use of 4/4 meter (also known as common time and is by far the most
     prevalent meter in popular music) (Ferrara Decl., ¶1, Exh. 1 at 12.);

19  • Use of a tempo within the range of *moderato* to *allegro*, *i.e.*, 112-160 beats
     per minute;

20  • A length of 3-5 minutes;

21  • Use of a structure that includes an introduction, verse, a repeating chorus that
     represents the "hook" or most identifiable aspect of the work, a breakdown,

22   and an outro (including fade) (*See*, Ferrara Decl., ¶1, Exh. 1 at 5, 7.);

23  • Use of "rapping" or unpitched spoken words;

24  • Use of drums (acoustic or otherwise) in combination with electronic
     instruments and sounds;

25  • Drum beats characterized by the bass drum being heard on beats 1, and the
     snare drum (or handclaps) being heard on beats 2 and/or 4, as well as stock

26   rhythms and use of syncopation (*See*, *Id.*, ¶1, Exh. 1 at 12, 34.);

27  • Use of the word "Boom" in repetition 3 or more times, and set to a rhythm in
     which the first "boom" is realized on the downbeat of the bar, there is a

28  

BRYAN CAVE LLP
3161 MICHELSON DRIVE, SUITE 1500
IRVINE, CALIFORNIA 92612-4414

BRYAN CAVE LLP
3161 MICHELSON DRIVE, SUITE 1500
IRVINE, CALIFORNIA 92612-4414

1    pickup to the first "boom" lyric, and the repeating "boom" lyrics include

2    syncopation.   This is an idea that has been used in at least 13 musical

3    compositions that predate Plaintiffs' work, including Defendants' own work..

     In addition, several other works that predate BD include a repeated "boom"

4    lyrics set to a rhythm that includes syncopation.  (*Id.*, ¶1, Exh. 1 at 25-33, 38-

     41.)

5         Indeed, all of the foregoing represent <u>standard</u> treatments of elements often

6    present in popular music, or in the prior art, and as such cannot form the basis of a

7    finding of infringement.  *See*, *Tisi*, 97 F. Supp. 2d at 548-49 (key center, tempo,

8    common chord structure/harmonic progression, and stock rhythms are "not

9    copyrightable as a matter of law."); *Intersong-USA v. CBS, Inc.*, 757 F. Supp. 274,

10   282 (S.D.N.Y. 1991) (generic structure, patterns, harmonic progression, and

11   rhythms as contained in composition were common musical elements and hence, not

12   copyrightable); *Johnson*, *supra*, 409 F.3d at 20-24 (common harmonic progressions

13   and lyrics not protected).  Moreover, Plaintiffs' experts' reliance on generic aspects

14   of popular music to infer copying is highly improper and in contravention of the

15   extrinsic test; the proper course would have been to filter such elements, as the court

16   in *McRae v. Smith*, 968 F. Supp. 559, 567 (D. Colo. 1997) made clear:

17        Although plaintiff's experts opine that the songs are strikingly similar
          or so similar as to preclude independent creation, an issue of fact
18        cannot be created by merely reciting the magic words "strikingly
          similar" and "no possibility of independent creation." As noted above,
19        **plaintiff has not come forward with specific evidence that,
20        filtering out the common and nonprotectable elements of these
          songs, they are so strikingly similar as to preclude independent
21        creation**. Plaintiff's experts have failed to refute the evidence of
          dissimilarities in these nonprotectable areas and instead focus their
22        analysis on areas that are common to songs of the country western
23        genre and therefore must be filtered out before the comparison is
          made. (emphasis added)
24

25        Two musical works in a popular genre may share many elements in

26   common, but that is far less indicative of copying, than of the fact that

27   certain elements are standard treatments of a limited and finite musical

28

1   vocabulary. Here, each of the elements of BD that Plaintiffs allege were

2   copied by the Defendants represent nothing more than musical

3   commonplaces, or prior art, a fact that rings true when considering those

4   elements by themselves or in the combination employed by Plaintiffs.  As

5   such, those commonplaces too must be filtered out of the analysis.

6   **__The Works Feature Many Dissimilarities.__** The chorus is Plaintiffs'

7   main focus for comparison.  However, after filtering each of the unprotected

8   elements from Plaintiffs' work—including the idea of a repeated "boom"

9   (including syncopation), the words "Boom Dynamite" and their concomitant

10  rhythm—there are no remaining similarities that they point to as support for

11  their claim of infringement.  Virtually all that is left is the melodic contours

12  of the choruses, which are markedly different when compared *in toto*.

13  Indeed, isolation thereof renders particularly dubious Alexander Stewart's

14  opinion that the works' hooks are " nearly identical."[17]  This error is

15  evidenced when simply humming the respective melodies.

16      And assuming Plaintiffs were entitled to some protection in the rhythmic

17  aspects they appropriated and are present in their chorus, the metric placement of the

18  repeated "boom" lyrics is different from BBP. (Ferrara Decl., ¶1, Exh. 1 at 22-24,

19  37.)  So too is the grouping: there are groups of 3 "booms" in BBP but groupings of

20  5 "booms" in BD.  The duration of the "boom" lyrics is different. (*Id.*, ¶1, Exh. 1 at

21  22-24.)    Finally, the "boom boom boom" setting is sung in BBP and the "boom

22  boom boom boom boom" setting is spoken in BD.  (*Id.*, ¶1, Exh. 1 at 24-25, 37-38.)

23      Beyond the fundamental differences in the works' respective

24  choruses, there are several other differences, including: specific treatment of

25  a generic overall structure (form); specific rhythmic articulation; harmonic

26  structure, including tonal center (BD is in F Phrygian, whereas BBP is in A

27

28  [17] *See*, Stewart Decl, ¶ 4.

BRYAN CAVE LLP
3161 MICHELSON DRIVE, SUITE 1500
IRVINE, CALIFORNIA 92612-4414

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

1   minor); instrumentation; arrangement and spatial organization of

2   instruments; specific motives employed in accompanying material, vocals,

3   lyrics (specific content and meaning), and electronic effects used. (*See*,

4   generally, Ferrara Decl., ¶1, Exh. 1) (discussing in detail works' significant

5   differences and well as similarities that are heard within a context of many

6   differences, with accompanying audio exhibits).

7        Simply put, Plaintiffs have identified <u>no</u> shared similarities of

8   protected elements and have done nothing to explain why the significant

9   differences between the works should be overlooked in light of the extrinsic

10  test.  *See*, *Kouf v. Walt Disney Pictures & Television*, 16 F.3d 1042, 1045

11  (9th Cir. 1994) (courts have found the evidence to fail the extrinsic test

12  where there have been substantial differences between the plaintiff's and the

13  defendant's works).  As such, Plaintiffs will not be able to satisfy the

14  extrinsic test, and thus cannot establish a likelihood of success on their

15  claim. *Funky Films, Inc. v. Time Warner Entertainment Co., L.P.*, 462 F.3d

16  1072, 1077 (9th Cir. 2006) ("A plaintiff who cannot satisfy the extrinsic test

17  necessarily loses.") (citation omitted).

18                    **(b)   <u>Intrinsic Test.</u>**

19        Plaintiffs likewise cannot satisfy the intrinsic test.  The intrinsic test

20  focuses solely on the similarity of expression of two works.  *Berkic v.*

21  *Crichton*, 761 F.2d 1289, 1292 (9th Cir. 1985).  It is subjective, examining

22  an ordinary person's subjective impressions of the similarities between the

23  two works, and is exclusively the province of the trier of fact.  *Funky Films*,

24  462 F.3d at 1077.  In other words, this test does not permit expert testimony,

25  nor does it allow analytic dissection.  *Apple Computer, Inc., supra*, 35 F.3d

26  at 1442; *Sid & Marty Krofft,* 562 F.2d at 1164.

27        As such, under the intrinsic test, works are viewed "as a whole,"

28  *Express, LLC v. Fetish Group, Inc.*, 424 F. Supp. 2d 1211, 1228 (C.D. Cal.

BRYAN CAVE LLP
3161 MICHELSON DRIVE, SUITE 1500
IRVINE, CALIFORNIA 92612-4414

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

1  2006), carefully keeping in mind that unprotected material as identified

2  under the extrinsic test <u>cannot</u> be relied upon.  *Apple*, 35 F.3d at 1446 ("the

3  unprotectable elements have to be identified, or filtered, before the works

4  can be considered as a whole.")  Under the intrinsic test, the trier of fact

5  must determine "whether the ordinary, reasonable person would find the

6  total concept and feel of the works to be substantially similar."  *Three Boys*,

7  212 F.3d at 485.

8       As set forth above, the combination and treatment of the various

9  constituent elements of the subject works are quite different.  As such, when

10  they are considered as a whole, they generate different aural experiences

11  such that no reasonable person, measured from the standpoint of the

12  intended audience, would conclude that the subject works sound alike.  *See,*

13  *Johnson Controls, Inc. v. Phoenix Control Systems, Inc.*, 886 F.2d 1173,

14  1176 n.4 (9th Cir. 1989) ("By 'reasonable person' we mean a reasonable

15  person in the intended audience.").  The intended audience of musical works

16  are those who listen to, and are generally interested in, music.  Plaintiffs'

17  publicity campaign, and Plaintiff Mohr's posing as a disinterested party and

18  injecting self serving comments in an attempt to manipulate the discussion

19  has infected the public opinion.  However, notwithstanding their attempt to

20  fabricate their opinion as the public opinion and/or to persuade the public to

21  see them as the victim and Defendants as thieves, a sampling of the

22  comments posted on the "Boom Dynamite," YouTube page by those users

23  speaks volumes.  Those comments include:

24      •  "The only similarity is the fact they both sing BOOM."

25      •  "I heard 30 seconds of this and it got on my nerves quickly. This is so stupid. This damn song sounds nothing like Boom Boom Pow. Just because the word "boom" is in it doesn't mean BEP stole this."

26      •  "WHAT?? this is nothing like boomboom pow -.- only thing similar to me is, is that boom boom?? but it also has different beat. i guess nowadays people

27  just wanna get rich. and the way to go is by Lawsuit. -.-"

       •  "BEP have NOT stolen this song. There are a few similarities, but

28  largely the melodies and vocals are still very much different."

BRYAN CAVE LLP
3161 MICHELSON DRIVE, SUITE 1500
IRVINE, CALIFORNIA 92612-4414

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

BRYAN CAVE LLP
3161 MICHELSON DRIVE, SUITE 1500
IRVINE, CALIFORNIA 92612-4414

- • "I honestly don't hear a similarity, except for the obvious "i got that boom...boom...boom". I'm not just saying that because I'm a bep fan... it's just my honest opinion."
- • "you CANNOT compare this with boom boom pow! the beat isnt the same, and the only thing in common is 'boom'"
- • "The one line "...i Got That Boom..." , along with a similar beat when she sings that part, is the ONLY similarity between the 2 songs. The 2 songs are MUCH more different than they are similar. I don't think that the one line is enough to say that BEP copied from her."
- • "I listened to both songs. The only similarity I hear is a few words, and that's it. I don't hear any sampling, or ripped verses. The drama surrounding the songs aside, I doubt a judge would find any infringement between the songs. They don't even sound alike or have similar beats. You can't even copyright specific words. Phoenix should just make more music and stop looking for frivolous lawsuits."
- • "This doesn't sound that similar to me, actually. **It sounds more like Britney's "I've got that Boom Boom"** It's similar it what is says, but of course a lot of hip hop songs are similar theme. The same way a lot of country songs are similar in theme, etc. A person can unconsciously draw influence from everything they've ever seen, so I think plagiarism accusations has to be very blatant in order to be valid..." (emphasis added).

Hundreds of additional similar comments are found on that same YouTube page, and they overwhelmingly outnumber any comments finding meaningful similarities.[18]  Perhaps the most telling comment of all is the following:

> "Suing the BEP was obviously a way for their music to get more listeners. Never heard of this song until I heard about the court cases. Watched this video twice, before watching bbp and after and they only really similarity is that they both have 'boom' in them. "Gotta get that boom boom boom" and "I got that boom, boom boom, boom, boom" are not similar at all. None of the lyrics are the same. If you seriously think that they've got a case, you must have some serious listening problems."

These comments, that surfaced notwithstanding Plaintiffs' publicity campaign designed to infect the dialogue, provide an unvarnished, unbiased, first-hand look at what Plaintiffs have ignored.  With raw, unadulterated accuracy, Plaintiffs' intended audience has stated that the total concept and feel of works are substantially dissimilar.  The dissimilarities between the subject works may be lost on Plaintiffs who have a bias and motive to cloud their perspective, but it should not be lost on

; *see* Ferrara Schedule 1 generally.

[18] To the extent Plaintiffs point to contravening reviews, it is important to note that Mr. Mohr, using the alias "Big Mo Music," published what will later be shown to be misrepresentations of comparative testing on a website linked to a YouTube channel that he had established to promote and generate sales of BD.

1   this Court.  Plaintiffs cannot satisfy the intrinsic test.

2                    **(c)      <u>Independent creation</u>**

3       Independent creation negates a critical component of Plaintiffs' case: factual

4   copying.  The lack of factual copying is fatal to a copyright infringement claim.

5   *See*, MELVILLE B. NIMMER & DAVID NIMMER, NIMMER ON COPYRIGHT § 13.01[B]

6   (2011)§ 13.01[B] (2011) ("[E]ven when two works are substantially similar with

7   respect to protectable expression, if the defendant did not copy as a factual matter,

8   but instead independently created the work at issue, then infringement liability must

9   be denied."); *Sheldon v. Metro-Goldwyn Pictures*, 81 F.2d 49, 54 (2d Cir. 1936) ("if

10  by some magic a man who had never known it were to compose anew Keat's Ode

11  on a Grecian Urn, he would be an 'author,' and, if he copyrighted it, others might

12  not copy that poem, though they might of course copy Keat's.") (L. Hand, J.);

13  *ConFold Pacific, Inc. v. Polaris Industries, Inc.*, 433 F.3d 952, 959 (7th Cir. 2006)

14  (Posner J.) ("[A] patent right is good against the whole world. A copyright is not

15  because independent discovery is a defense to a copyright—or a trade secret—

16  claim.").

17      Here, substantial evidence demonstrates that Defendants created BBP

18  independently of, and without reference to BD.  As Dr. Ferrara points out,

19  Defendants' work is more similar in terms of combination of rhythms and lyrics to

20  their own preexisting composition, "They Don't Want Music," a 2005 work that

21  antedates BD by at least two years according to their own dating. Significantly,

22  "They Don't Want Music" also contains the word "boom" in repetition, and the

23  particular treatment thereof "establishes [Defendants'] own rhythmic and lyrical

24  'fingerprint' that is embodied in BBP, and supports [the] conclusion that BBP was

25  created independently of any influence from BD."  (Ferrara Decl., ¶1, Exh. 1 at 2,

26  39-41.)

27      That an artist drew inspiration from their own prior work is hardly a

28  surprising phenomenon as Western musical literature is replete with examples of

BRYAN CAVE LLP
3161 MICHELSON DRIVE, SUITE 1500
IRVINE, CALIFORNIA 92612-4414

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

1    composers recasting their prior works (or constituent musical material thereof) in

2    new forms or settings, *e.g.*, Johann Sebastian Bach (1685-1750), who arranged and

3    incorporated the prelude from his Partita for Solo Violin No. 3, BWV 1006 in a least

4    three additional and varied settings.

5         **B.      Plaintiffs Fail to Establish Irreparable Harm.**

6         In light of the Supreme Court's holding in *eBay Inv. v. MercExhange, L.L.C.*,

7    547 U.S. 388 (2006), Plaintiffs are wrong that where a copyright plaintiff establishes

8    a likelihood of success on the merits, a presumption of irreparable harm

9    automatically follows.  That case sounded the death knell of the presumption by

10   stating that it had "consistently rejected invitations to replace traditional equitable

11   considerations with a rule that an injunction automatically follows a determination

12   that a copyright has been infringed."  *Id.* at 392-393; *see also Winter v. Natural*

13   *Resources Defense Council, Inc.*, 55 U.S. 7 (2008); MELVILLE B. NIMMER & DAVID

14   NIMMER, NIMMER ON COPYRIGHT § 14.06 (2011) ("No longer applicable is the

15   presumption of irreparable harm."); *Hologic, Inc. v. Senorx, Inc.*, 2008 WL

16   1860035, *15 (N.D. Cal. April 25, 2008) (it is "doubtful that the Supreme Court

17   intended for the presumption to survive for purposes of preliminary injunctions");

18   *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1211

19   (C.D. Cal. 2007) ("The eBay Court held that it is Plaintiffs who 'must demonstrate'

20   (meaning, have the burden of proof) that the traditional factors favor a permanent`

21   injunction.").[19]

22        Any doubt that the *eBay* case applies with equal force to preliminary

23   injunctions sought in copyright cases was resolved in *Salinger v. Colting*, 607 F.3d

---

[19] *See also S.S. Enterprises v. India Sari Palace Inc.*, 1983 WL 1129, at *5
(S.D.N.Y. 1983) (when thin market existed for copyrighted works at issue, no
irreparable harm can be found because there is no developed market that can be
harmed.  In such cases, "money damages is the appropriate relief."); *In re Microsoft
Corporation Antitrust Litigation*, 333 F.3d 517, 529 (4th Cir. 2003), citing
*California v. American Stores*, 495 U.S. 271, 281 (1990) ("'conditions and
principles' of equity . . . require immediacy of irreparable harm for all preliminary
injunctions.")

BRYAN CAVE LLP
3161 MICHELSON DRIVE, SUITE 1500
IRVINE, CALIFORNIA 92612-4414

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

68 (2d. Cir. 2010).  In *Salinger*, the heirs of author J.D. Salinger sued the author of "60 Years Later: Coming Through the Rye," arguing it infringed "Catcher in the Rye."  In granting plaintiffs' motion for preliminary injunction, the district court concluded plaintiffs had demonstrated a likelihood of success on the merits, and irreparable harm was presumed.

The Second Circuit reversed, holding that the *eBay* prohibition against presumptions of irreparable harm applied.  *Id.* at 72 ("*eBay* strongly indicates that the traditional principles of equity it employed are the presumptive standard for injunctions in any context").  *Id.* at 78.  To this end, the Second Circuit concluded that "[t]he court must not adopt a 'categorical' or 'general' rule or presume that the plaintiff will suffer irreparable harm (unless such a 'departure from the long tradition of equity practice' was intended by Congress).  *Id.* at 80 (citing *eBay*, 547 U.S. at 391, 393-93).  Rather, "the court must actually consider the injury the plaintiff will suffer if he or she loses on the preliminary injunction but ultimately prevails on the merits, <u>paying particular attention to whether the "remedies available at law, such as monetary damages are inadequate to compensate for that injury.</u>" *Id.* (citing *eBay,* 547 U.S. at 391; *Winter* 129 S. Ct. at 129) (emphasis added).

As set forth above, Plaintiffs cannot establish a likelihood of success on the merits.  Moreover, even if they could, under *eBay*, they cannot avail themselves of a presumption of irreparable harm.  Rather they must establish all four factors, including irreparable harm.  That is a burden Plaintiffs cannot meet.

A "long delay before seeking a preliminary injunction implies a lack of urgency and irreparable harm."  *Oakland Tribune, Inc. v. Chronicle Publ. Co.*, 762 F.2d 1374, 1377 (9th Cir. 1985).  Even a delay of *four months* has been found in this district to warrant denial of a plaintiff's motion for preliminary injunction.  *See*, *Metro-Media Broadcasting Corp. v. MGM/UA Entertainment Co.*, 611 F. Supp. 415, 427 (C.D. Cal. 1985) (emphasis added); *see also Playboy Enters. v. Netscape Communications Corp.*, 55 F. Supp. 2d 1070, 1080, 1090 (C.D. Cal. 1999) (five-

BRYAN CAVE LLP
3161 MICHELSON DRIVE, SUITE 1500
IRVINE, CALIFORNIA 92612-4414

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

BRYAN CAVE LLP
3161 MICHELSON DRIVE, SUITE 1500
IRVINE, CALIFORNIA 92612-4414

1  month delay demonstrated lack of irreparable harm), *aff'd*, 202 F.3d 278 (9th Cir.

2  1999); *High-Tech Medical Instrumentation, Inc. v. New Image Indus., Inc.*, 49 F.3d

3  1551, 1556-57 (Fed. Cir. 1995) (17-month delay "militates against the issuance of a

4  preliminary injunction."); *Protech Diamond Tools, Incorporation v. Liao, No. C 08-*

5  *3684 SBA*, 2009 WL 1626587, at *6 (N.D. Cal. June 8, 2009) ("delay alone . . . [is]

6  sufficient to undermine the Plaintiff's claim of immediate, irreparable harm").[20]

7      Here, Plaintiffs' nearly two-year delay is fatal to their requested relief.

8  Plaintiff Batts admits she became aware of the alleged infringement on or about

9  March 30, *2009*, yet did not seek injunctive relief until January 10, *2011*. *See*, Batts

10  Decl., ¶14.  That 22 month-delay confirms a lack of urgency and irreparable harm.[21]

11  *See*, *Oakland Tribune, supra*, 762 F.2d at 1377; *Metro-Media, supra*, 611 F. Supp.

12  427.[22]  Even more telling: Plaintiffs undertook steps to *benefit* from that delay.

13  Plaintiffs' delay and unclean hands prevents them from seeking equitable relief.

14      Equally fatal: monetary relief can adequately and completely address

15  Plaintiffs' alleged injuries. *See*, *Sampson v. Murray*, 415 U.S. 61, 88 (1974) ("The

16  possibility that adequate compensatory or other corrective relief will be available at

17  a later date, in the ordinary course of litigation, weighs heavily against a claim of

18  irreparable harm.") (citation omitted); *Abend v. MCA, Inc.*, 863 F.2d 1465, 1479

19  (9th Cir. 1988) (declining to enjoin distribution of "Rear Window" as plaintiff could

20  "be compensated adequately for the infringement by monetary compensation").

[20] A preliminary injunction implies "an urgent need for speedy action to protect the plaintiff's rights.  By sleeping on its rights a plaintiff demonstrates the lack of need for speedy action."  *Gillette Co. v. Ed Pinaud, Inc.*, 178 F. Supp. 618, 622 (S.D.N.Y. 1959) (denial of injunction where Plaintiff delayed six months).

[21] Even more telling: Plaintiffs undertook steps to benefit from that delay. They "milked" this case for its publicity, giving radio and print interviews in hopes of generating sales.  Their unclean hands also bars them from seeking equitable relief.

[22] Notably absent from either of the Declarations submitted by the Plaintiffs is any showing (or even a claim) of "irreparable harm."  Clearly, this was not a mere oversight.  Plaintiffs' failure to state under oath not only how the harm that they would suffer absent an injunction would be irreparable, but also just the fact that they would suffer irreparable harm, is telling, and further weighs against a finding of irreparable harm.

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

Plaintiffs have failed to put forth any evidence that monetary damages would not suffice to redress their harms.  This is because no such evidence exists.  As "a relatively unknown singer/songwriter," no undeveloped market exists for Plaintiffs' works.  When no developed market exists for the works at issue, no irreparable harm can be found, and "money damages is the appropriate relief."  *See*, *S.S. Enterprises v. India Sari Palace Inc.*, 1983 WL 1129, at *5 (S.D.N.Y. 1983).  Therefore, even if Plaintiffs could show a likelihood of success on the merits, they cannot establish irreparable harm.  Thus their request for injunctive relief must be denied.

## C.   A Balance of Hardships Weighs in Favor of Defendants.

The balancing of the hardships strongly favors the Defendants.[23]  Defendants are in the business of creating, recording, selling, performing, and licensing music.  To comply with Plaintiffs' proposed injunction, Defendants would be required to, *inter alia*, pull from all third-party distributors all albums that include BBP[24]  If Defendants are compelled to comply with Plaintiffs' proposed overbroad injunction, Defendants will suffer significant financial damage from being precluded from exploiting their work and their reputation with potential licensees.  This harm impacts their entire catalogue of work.  Balanced against the absence of any irreparable harm to Plaintiffs, the aforementioned damage to the Defendants strongly weigh against the issuance of an injunction.  *See*, *e.g., LucasFilm Ltd. v. Media Ltd. v. Media Market Group, Ltd.*, 182 F. Supp. 2d 897, 901 (N.D. Cal. 2002) (denying preliminary injunction where balance of hardships did not tip sharply in plaintiff's favor); *Chase-Riboud v. Dreamworks, Inc.*, 987 F. Supp. 1222, 1233

[23]An injunction may not issue unless the balance of harms favors the moving party. *See*, *International Jensen, Inc., v. Metrosound U.S.A., Inc.*, 4 F.3d 891, 822 (9th Cir. 1993).

[24] Plaintiffs' seek to enjoin Defendants "from infringing" Plaintiffs' "statutory copyright in any manner, including by way of distributing copies of, and making and distributing phonorecords of, the musical composition 'Boom Boom Pow' and from licensing and contributing to or participating in and furthering any infringing acts, including, but not limited to any public performances of the song 'Boom Boom Pow.'"  *See*, Plaintiffs' [Proposed] Preliminary Injunction.

BRYAN CAVE LLP
3161 MICHELSON DRIVE, SUITE 1500
IRVINE, CALIFORNIA 92612-4414

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

1    (C.D. Cal. 1997).

2    **D.**    <u>**An Injunction Would Not Serve the Public Interest**</u>

3       Plaintiffs assert "a public interest in upholding intellectual property rights

4    such as copyright protections," suggesting an injunction here will serve that interest

5    by maintaining "the integrity of the music industry" and "deter[ing] major labels

6    and super-star artists from engaging in similar conduct."[25] (Mot. 18-19.)  While

7    ostensibly noble, that argument is unpersuasive given Plaintiffs' lawsuit is based on

8    material *they* lifted from prior works.

9       Copyright law serves the purpose of enriching the general public through

10    access to creative works.  As such, access to Defendants' work outweighs the need

11    to protect Plaintiffs' purported rights, especially given monetary relief would

12    redress Plaintiffs' alleged harms.  *See*, *Abend*, *supra*, 863 F.2d at 1479 (injunction

13    would injure public by denying it the opportunity to view Hitchcock's classic,

14    "Rear Window"); *Trust Co. Bank v. Putnam Publ'g Group, Inc.*, 5 U.S.P.Q.2d

15    1874, 1877 (C.D. Cal. 1988) (denying preliminary injunction because of the

16    "strong public interest favoring the publication of books and novels."); *see also*

17    *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 527 (1994) ("a successful defense of a

18    copyright infringement action may further the policies of the Copyright Act every

19    bit as much as a successful prosecution."). In short, given the genesis of Plaintiffs'

20    BD, the adequate remedy available at law, and public policy favoring access to

21    creative works, Defendants must have the opportunity to present a full defense

22    before an injunction issues.  This alone serves the public interest by maintaining

23    the Constitutional balance of respecting authors' rights, while providing others the

24    latitude to create new works and disseminate information that benefits the public.

---

25    [25]Plaintiffs base their argument here on the purported pattern and practice of

26    Defendants to engage in copyright infringement.  These allegations, however, which

27    are both improper and false, are the subject of a pending Motion to Strike that is set
for hearing on January 24, 2011 and the subject of evidentiary objections.  Tellingly

28    they submit no evidence to support such assertion.

BRYAN CAVE LLP
3161 MICHELSON DRIVE, SUITE 1500
IRVINE, CALIFORNIA 92612-4414

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

## II. PLAINTIFF SHOULD NOT BE PERMITTED TO DEVIATE FROM FED. R. CIV. P. 65(C)

Rule 65(c) requires the posting of a bond and grants courts discretion only in determining the amount of the bond to be posted, "[b]ecause an error in setting the bond too high is not serious, the district courts should err on the high side when setting bond." *Builder's World, Inc. v. Marvin Lumber & Cedar, Inc*., 482 F. Supp. 2d 1065, 1078 (E.D. Wis. 2007) (citing *Mead Johnson & Co. v. Abbott Labs*., 201 F.3d 883, 888 (7th Cir. 2000)).

In the Ninth Circuit, the general rule is to require the posting of a bond in a copyright infringement action where a preliminary injunction has been sought.  *See*, *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1028 (9th Cir. 2001) ($5 million bond in copyright infringement action); *Religious Technology Center v. Netcom On-Line Communication Services, Inc.*, 923 F. Supp. 1231, 1266 (N.D. Cal. 1995) ($25,000 bond in copyright case); *CyberMedia, Inc. v. Symantec Corp.*, 19 F. Supp. 2d 1070, 1080 (N.D. Cal. 1998) (requiring the posting of a bond of $1.6 million, which figure represented the profits the alleged infringer expected to lose on lost sales pending trial).  This is based on sound public policy as a bond "assures the enjoined party that it may readily collect damages from the funds posted or the surety provided in the event that it was wrongfully enjoined, without further litigation and without regard to the possible insolvency of the assured." *Continuum Co. v. Incepts, Inc.*, 873 F.2d 801, 803 (5th Cir. 1989).

Here, as struggling musicians, Plaintiffs state that they "cannot afford to post a substantial bond."  This inability to pay is precisely what Rule 65(c) is intended to guard against.  By providing that "no restraining order or preliminary injunction shall issue except upon the giving of security," Rule 65(c) is intended to insure that the defendant is able to collect the damages it suffers in the event injunctive relief is improperly granted.  Here, Defendants estimate that they will be damaged in the amount of $5 million (which includes substantial tangible and intangible harm over

BRYAN CAVE LLP
3161 MICHELSON DRIVE, SUITE 1500
IRVINE, CALIFORNIA 92612-4414

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

1  and above the amount identified by Universal Music Group) in the event an

2  injunction improperly issues.  As such, they respectfully request this Court require

3  Plaintiffs to post a security in that amount to compensate for the financial havoc

4  such an injunction will cause.[26]

5                                    **Conclusion**

6          Based on the foregoing, this Court should deny Plaintiffs' Motion.

7  Dated:  January 18, 2011                   BRYAN CAVE LLP
                                              Kara E.F. Cenar
                                              Jonathan Pink
8

9                                             By:   / s / Jonathan Pink
                                                     Jonathan Pink
10                                            Attorneys for Defendants
                                              WILLIAM ADAMS; ALLAN PINEDA;
11                                            and JAIME GOMEZ, all individually and
                                              collectively as the music group THE
12                                            BLACK EYED PEAS; JAIME MUNSON
                                              a/k/a Poet Name Life; will.i.am music, llc;
13                                            TAB MAGNETIC PUBLISHING;
                                              CHERRY RIVER MUSIC CO.; JEEPNEY
14                                            MUSIC, INC.

15                                            **McPHERSON RANE LLP**
                                              Edwin F. McPherson
16                                            Tracy B. Rane

17

18                                            By: */s/ Edwin F. McPherson*
19                                                    Edwin F. McPherson
                                              Attorneys for Defendants
20                                            STACY FERGUSON p/k/a FERGIE,
                                              HEADPHONE JUNKIE PUBLISHING,
21                                            LLC and EMI APRIL MUSIC
                                              PUBLISHING, INC.

22

23

24

25

26  [26] As set forth in the concurrently filed objections, Plaintiffs' expert reports should
    be excluded because they: (1) attempt apply law and reach legal conclusions in so
27  doing; (2) they misapply the law of the Ninth Circuit; (3) do not filter any
    unprotected elements; and (4) are unnecessary as the musical analysis also appears
28  in Batts' and Mohr's declarations.

BRYAN CAVE LLP
3161 MICHELSON DRIVE, SUITE 1500
IRVINE, CALIFORNIA 92612-4414

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**